OPINION OF THE COURT
Fuchsberg, J.
The questions posed in common by these five appeals call upon us to interpret CPL 170.40 for the first time since it was amended in 1979 (L 1979, ch 216, § 1, eff Jan. 1,1980). Particularly, these probe a local criminal court’s authority to dismiss an information in the interest of justice.
In each case, the Onondaga County Court, in the exercise of its appellate jurisdiction (CPL 450.60, subd 3), reversed an order of the Syracuse City Court, which, acting under CPL 170.40, dismissed an information charging a father with nonsupport of his child in violation of section *126 260.05 of the Penal Law.[1] Because, in each instance,[2] we do not agree with the County Court’s conclusion that the City Court abused its discretion as a matter of law, we now, in turn, reverse the County Court’s orders. Our reasons follow.
Although the current version of CPL 170.40 is, in substantial part, the product of its recent amendment, the inherent power it bespeaks has ancient roots. Its New York legislative antecedents alone go back more than a century to the adoption, in 1881, of sections 663, 664 and 671 of the former Code of Criminal Procedure. But long before then, it had a respected place in the common law (People v Clayton, 41 AD2d 204, 206 [Hopkins, J.]; see People v Quill, 11 Misc 2d 512, 513 [Sobel, J.]). Throughout this history, and no less today, its thrust, even to the disregard of legal or factual merit, has been “to allow the letter of the law gracefully and charitably to succumb to the spirit of justice” (People v Davis, 55 Misc 2d 656, 659). Indeed, it may not be too much to say that, in a broad sense, the idea was to introduce into the criminal law a flexibility somewhat akin to that equity essayed on the civil side (see Matter of Lessig, 168 Misc 889, 890 [“equity” and “justice” substantially equivalent]).[3]
The generality and exquisiteness of the interest of justice ideal was not intended, however, to convey an untrammeled right to act on purely subjective considerations. *127 Required, rather, was a sensitive balancing of the interests of the individual and of the People (People v Belkota, 50 AD2d 118, 120 [Simons, J.]). Discomfited that, nevertheless, CPL 170.40 and 210.40 (as these existed prior to 1979) prescribed neither specification of “criteria for the responsible exercise” of interest of justice discretion nor articulation of “the manner and extent to which a particular case meets such criteria”, this court, in People v Belge (41 NY2d 60, 62), expressed concern that, absent such guidelines, whether judicially or legislatively declared, effective appellate review was, to say the least, difficult. Indicating a decided preference for legislative correction, we expressly invited the attention of the Legislature “to this predicament”.
That the 1979 amendment was a direct response to the Belge invitation is acknowledged (see Governor’s Memorandum on Approval, 1979 McKinney’s Session Laws of NY, p 1775; Memorandum of Office of Court Administration, 1979 McKinney’s Session Laws of NY, p 1879; Memorandum of Office of Special Prosecutor in support of A 682, to become CPL 170.40, as amd). Set out in subdivision 1 of the section, the new matter provided that, in determining whether “the existence of some compelling factor, consideration or circumstance clearly demonstrated]” that “dismissal is required as a matter of judicial discretion”, a court “must, to the extent applicable, examine and consider, individually and collectively, the following:
“(a) the seriousness and circumstances of the offense;
“(b) the extent of harm caused by the offense;
“(c) the evidence of guilt, whether admissible or inadmissible at trial;
“(d) the history, character and condition of the defendant;
“(e) any exceptionally serious misconduct of law enforcement personnel * * *;
“(f) the purpose and effect of imposing upon the defendant a sentence * * *;
“(g) the impact of a dismissal on the safety or welfare of the community;
*128 “(h) the impact of a dismissal upon * * * confidence * * * in the criminal justice system;
“(i) * * * the attitude of the complainant or victim with respect to the motion;
“(j) any other relevant fact indicating that * * * conviction would serve no useful purpose”.
In addition, under the statute’s re-enacted subdivision 2, a court, upon issuing a CPL 170.40 order of dismissal, “must set forth its reasons therefor upon the record”.
Scrutinizing these provisions, we see that, while a Judge who grants a 170.40 motion is mandated to state reasons for this action, whether recited in “written or orally-delivered-on-the-record” form (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 210.40, p 156), there is no comparable requirement that the Judge’s equally mandatory “examination” and “consideration” of each of the decalogue of possible determinants which make up paragraphs (a) through (j) of subdivision 1 be spelled out in so many words. As a practical matter, though, vague or conclusory reasons, unsupported by a record which gives them enough substance to “clearly demonstrate” the actual existence of at least “some compelling factor, consideration or circumstance”, will not make for the intended meaningful appellate review. Without more, then, the “manner and extent to which a particular case” accords with the criteria which the framers of the statute provided (People v Belge, supra; Bellacosa, Practice Commentary, op. cit.) will not have been met.
Thus, while the statute does not compel catechistic on-the-record discussion of items (a) through (j), useful as that would be to indicate that in fact all applicable items have been considered, the need to show that the ultimate reasons given for the dismissal are both real and compelling almost inevitably will mean that one or more of the statutory criteria, even if only the catchall (j), will yield to ready identification.
So tested, it is apparent that in none of the cases before us can it be said as a matter of law that the Syracuse City Court abused its discretion.
*129 In the Rickert case, for instance, the record reveals that, after a hearing, the City Court came to the conclusion that the defendant was not the “ ‘recalcitrant parent’ the penal statute is designed to seek out”. For, as the court expressly found from the evidence, the defendant, who candidly conceded his arrears, was also, during the period for which he was being criminally charged with nonsupport, financially burdened by responsibility to his wife and their child and the effects of a prior “lengthy period of unemployment during which the defendant reasonably incurred a large number of debts”. Moreover, as borne out by testimony, he nonetheless “did make payments at various times when he was employed”, on occasions even prevailed upon his wife, when she earned any money, to assist in meeting this obligation and had “resumed his regular payments upon stabilizing his financial situation, months prior to institution of these charges” (emphasis added). Finally and confirmatorily, the Social Services Department’s support enforcement officer assigned to monitor defendant’s payments advised the court that the defendant’s co-operation had made it unnecessary for the agency to resort to Family Court collection facilities. On these facts, acting under CPL 170.40, the City Court reasoned that “no useful purpose to society will be served by continuance of this prosecution” (see CPL 170.40, subd 1, par [j]).
For its part, the County Court, in a brief memorandum, premised its determination that the dismissal was an abuse of discretion on no more than the assertion that, though the City Court had articulated its “no useful purpose” rationale, it had not “indicate[d]” that it found a “compelling factor which would cause injustice”. Nor, though the undisputed facts, in greater or lesser degree, could in fact be found supportive of all the statutory criteria but (f), did the County Court advantage itself in the slightest of the standards the amendment had made available to ease appellate review. So, whether this holding was meant to say that the lower court decision was deficient for failing to incant the “compelling factor” phraseology or that, however labeled, the record was insufficient to sustain the exercise of discretion, it cannot stand.
*130 The City Court’s joint opinion in the other four cases is even more replete with consideration of relevant factors. Employing a realism especially suitable in the context of an interest of justice determination, it informs us that three of the defendants, Boyer, Black and Agyeman, were in such indigent circumstances that whatever opportunity there may have been to treat constructively with their support obligations through the Family Court would have been destroyed by their incarceration. One of these three was a student dependent for his own sustenance on part-time work and grants. The fourth one, Brown, who had suffered a heart attack, had attempted to clear up his support arrears only to be repulsed by the District Attorney’s insistence on a finding of guilt.
The opinion further advises that, except for Black, who in the past had once been held in contempt in the Family Court, the defendants had no previous involvement with the criminal justice system so that convictions would tend to stigmatize them and their families, discourage vocational rehabilitation, eliminate the prospect of restitution and, counterproductively, visit much of the burden of these handicaps on their families. Moreover, it took account of the fact that the indigencies would foist the cost of defense counsel upon the People. To boot, in a detailed analysis, the opinion points out that, what with dismissible accusatory instruments which had already required substitution by misdemeanor complaints, disputed payments which defendants claimed the mothers of the children had not reported to welfare authorities and the burden on the People to prove ability to provide support or disprove the other defenses raised by the defendants, conviction was less than certain.
Further, the opinion, among other things, found it significant that the Department of Social Services, given its expertise in such cases, did not regard the circumstances of these defendants as deserving of even the quasi-criminal action available in the Family Court. Finally, after considering both the statutory and decisional criteria relating to interest of justice dismissals, and quoting legislative commentary suggesting that the “optimum solution” for the problems, presented in nonsupport cases “is a judicial and *131 administrative framework such as is found in the Family-Court Act” (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 260.05, p 404), the City Court concluded that the “specific facts of these cases, combined with the inappropriateness of the criminal forum at this time, serve as the bases for the Court granting these motions to dismiss”.
In finding an abuse of discretion in these four cases too, the County Court grants that the City Court “clearly gives reasons for its decision”, but conclusorily goes on to say that “these reasons are neither of such a nature nor magnitude as to rise to the level of a Clayton dismissal”. To this, noting that the City Court’s opinion had included “a lengthy discussion of whether Criminal Court is the proper forum for these cases”, the County Court added that “the Court cannot use itself as a springboard for legislative reform”, “it is the prerogative of the District Attorney to prosecute people who fail to support their children under this statute” and “[i]t is not within the province of the trial court to determine that all non-support cases are to be handled by Family Court”. We comment briefly on each of these matters.
First, that a court directs the attention of the Legislature to what it conceives to be an urgent need for legislative reform is neither uncommon, improper nor, for that matter, disqualifying (e.g., People v Belge, 41 NY2d 60, supra; see Witkin, Manual on Appellate Court Opinions, p 160).
Second, while it is the prerogative of a District Attorney to prosecute people who commit crimes (see People v Zimmer, 51 NY2d 390, 394), the three City Court Judges who issued the opinion, describing the problem somewhat differently, put it that the District Attorney pursuant to a “blanket policy of insisting on full payment of Family Court arrears, in addition to a plea of guilty to the charge, fails to recognize that every case must be dealt with on an individual basis”. Belatedly, it is to be remembered that one of the reforms effected through the years in the procedure to dismiss accusatory instruments in the interest of justice was to remove the power to do so from the offices of District Attorney and Attorney-General and lodge it, instead, in the courts alone (Matter of McDonald v Sobel, 272 *132 App Div 455, 461, affd 297 NY 679; People v Quill, 11 Misc 2d 512, 513, supra).
Third, the City Court, in its opinion, did not determine that all nonsupport cases are to be handled by Family Court and that it was within the City Court’s province to so decide. To the contrary, whatever their views on the social wisdom of our prevailing system, the three Judges, overtly conscious of their judicial obligations, took the pains to state: “The adjudication herein is based upon the particular facts before us”.
Fourth, and most important, as to the adequacy of the City Court’s justification for its decision, suffice it that the reasons developed in its opinion come well within the compass of CPL 170.40 (subd 1, pars [a], [b], [c], [d], [f], [i]) and, keeping in mind that the statutory criteria are to be considered collectively as well as individually, may be said to be within paragraphs (g) and (h) as well. All the more is this so since, consistent with common sense, “the less serious nature of the criminal conduct affected by the procedure governed by * * * section [170.40], should make the more particularized and reviewable exercise of interest-of-justice discretion even more available here than in the felony-governing section 210.40” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 170.40, p 77; e.g., People v Davis, 55 Misc 2d 656, supra [marihuana acquired by student out of curiosity]; People v Campbell, 48 Misc 2d 798 [charge of abduction against defendant dismissed where complainant, two days before her 18th birthday, went to another State to marry without parental permission]).
Holding, therefore, that it cannot be said that in any of these cases the City Court, “in exercising its discretion, fail[ed] to take into account all the various factors entitled to consideration” (Varkonyi v S. A. Empresa De Viacao Airea Rio Grandense [Varig], 22 NY2d 333, 337, mot for rearg den 22 NY2d 973), we turn to the corrective action required by our Criminal Procedure Law.
Unlike this court, which is limited to reviewing questions of law in noncapital cases (People v Tyler, 46 NY2d 264, 267), an intermediate appellate tribunal, here *133 the County Court (CPL 1.20, subd 22), in an appropriate case possesses the power to review the facts and substitute its discretion for that of nisi prius even in the absence of abuse (CPL 470.15, subd 3, par [c]; People v Cona, 49 NY2d 26, 33; People v Alfonso, 6 NY2d 225, 229). When, however, as in the case before us now, the intermediate appellate court has not stated that it reviewed the facts upon which the criminal court’s order was based, it must be presumed that no such review was undertaken (CPL 470.25, subd 2, par [d]). Under these circumstances, CPL 470.40 (subd 2, par [b]) directs us to remit the case to the intermediate appellate court to enable it to do so (People v Berkowitz, 50 NY2d 333, 347).[4]
Accordingly, in each of these cases, the order from which the appeal is taken should be reversed and the case remitted to County Court, Onondaga County, for further proceedings in accordance with this opinion.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
In each case: Order reversed, etc.

. As relevant here, section 260.05 of the Penal Law, violation of which is a misdemeanor, provides that “A [father] is guilty of non-support of a child when * * * he fails or refuses without lawful excuse to provide support for such child when he is able to do so”.

. In the defendant Rickert’s case, the motion to dismiss was heard and decided separately. In the other four, those of Boyer, Black, Agyeman and Brown, while each one’s motion was addressed on its own facts to an individual Judge (two to one Judge and one each to two others), each case was decided in a “comprehensive” 40-page opinion signed by all three Judges. As the opinion explained, this procedure was adopted both because of the similarity of the issues raised and a felt “need for uniformity and guidelines in effectively dealing with the numerous prosecutions for non-support”. Individual orders of dismissal were entered.

. CPL 170.40 applies to “[a]n information, a simplified traffic information, a prosecutor’s information or a misdemeanor complaint” before a local criminal court (CPL 170.30, subd 1, par [g]). A parallel provision, CPL 210.40, governs accusatory instruments filed in superior courts (CPL 210.20, subd 1, par [i]). Both statutes received identical amendments in 1979.

. On this point, People v Wingard (33 NY2d 192) is not to be taken as authority to the contrary. The opinion there does not disclose why the court made what, without more, must be regarded as a procedural deviation.