*1018 OPINION OF THE COURT
Yvonne Lewis, J.
The defendant, Perry Smith, moves to dismiss the indictment pursuant to CPL 210.40. The defense requests that, in the interests of justice, the court dismiss the felony counts of the indictment, and allow the defendant to plead guilty to a misdemeanor count of the indictment. The People submit their response in opposition.
Mr. Smith is charged with robbery in the first degree, robbery in the third degree, four counts of grand larceny in the fourth degree, and criminal possession of stolen property in the fifth degree. The charges arise from two incidents in which Mr. Smith allegedly robbed two women near the Brooklyn Bridge.
The defense motion to dismiss is premised upon Mr. Smith’s participation in, and successful completion of, the Fortune Society’s Alternative to Incarceration/Substance Abuse Treatment Program (hereinafter the Program). The defense contends that Mr. Smith participated in the year-long program with the expectation and belief that, after successful completion of the Program, the District Attorney’s office would consider dismissing the felony counts of the indictment and offer Mr. Smith a plea to a TASC-like disposition.[1] The People deny that they ever consented to this disposition and request that the court deny the motion in its entirety. The court notes that no specific agreement was made between the defendant and the People on the record. The People never objected to Mr. Smith going into the Program. In fact, the People and defense were in continuous negotiation with respect to a plea. The court is now asked to consider whether a defendant’s successful completion of a 12-month program entitles defendant to a favorable consideration in terms of a plea disposition in the context of a Clayton motion.[2]
*1019 CPL 210.40 enumerates 10 criteria which the court must consider in determining whether to dismiss an indictment in the interests of justice. Although the court must consider these factors, all 10 of the factors need not be present in a specific case "so long as 'the ultimate reasons given for the dismissal are both real and compelling.’ ” (People v Vecchio, 139 Misc 2d 165, 169 [1987], quoting People v Rickert, 58 NY2d 122, 128 [1983]; People v Ramirez, NYLJ, Oct. 1, 1993, at 22, col 3.) Having reviewed the factors enumerated in CPL 210.40, and balanced the interests of the individual and the State, this court concludes that sufficient "real and compelling” factors do exist to warrant a dismissal of the felony charges of the indictment in the interests of justice. Although there are factors enumerated in CPL 210.40 which weigh on the side of the People, this court finds that the "real and compelling” factors which exist tip the scales in favor of a dismissal of the felony counts in the furtherance of justice.
The court recognizes the extraordinary development and progress that Mr. Smith has made towards becoming a productive member of society. The Fortune Society, a highly reputable organization, lauded Mr. Smith as "someone with real potential” who "will do well in his future endeavors.” Prior to his arrest and participation in the Program, Mr. Smith was unemployed, homeless, and addicted to drugs and alcohol. Mr. Smith had previously been convicted of drug-related activity.
Currently, Mr. Smith has made substantial efforts to gain employment; he is expected to be employed by the United Parcel Service. He is residing with his wife and child. The court ordered Mr. Smith to take a drug test. Mr. Smith tested negative which indicates that he is no longer addicted to drugs and alcohol. Mr. Smith has demonstrated that he is getting his life together. Although our prisons do provide inmates with an opportunity for rehabilitation (see, People v Ramirez, supra), the court recognizes and gives weight to the significant rehabilitation of Mr. Smith which has already occurred through his participation and completion of the Program (see, People v Richards, 156 Misc 2d 424 [1993]) and the other efforts he has made to demonstrate his willingness *1020 to turn his life around. In Richards, the court allowed a defendant, charged with class B felonies, to plead to class A misdemeanors, where the defendant had rehabilitated himself following successful completion of an alternative to incarceration program. (Supra.) Additionally, in People v Vecchio (supra), the court determined that the defendant’s satisfactory "second chance” experience in a residential drug rehabilitation was a " 'compelling factor, consideration or circumstance’ ” which warranted dismissal in the furtherance of justice (People v Vecchio, supra, at 168).
Mr. Smith was incarcerated during the period between his arrest (Nov. 29, 1991) and his release into the custody of Mr. Tad Martin of the Fortune Society (Mar. 19, 1992). The defendant entered the year-long rehabilitative program with the belief and understanding that the People would, pursuant to their policy at that point, dismiss the felony counts and allow the defendant to plead to the misdemeanor count of the indictment. Although the People did not consent, on the record, to this alternative to incarceration, the District Attorney’s office was aware that the defendant was relying on the People’s policy of dismissing the felony counts upon successful completion of a rehabilitative program.
The District Attorney’s office had an extensive history of offering nonjail options to defendants in need of drug treatment and other rehabilitation based on an assessment done by TASC, other treatment or rehabilitative programs and other social programs. The alternatives to incarceration enable a defendant, facing felony charges, to enter rehabilitative programs, such as the Fortune Society, and enhance a defendant’s chances for remaining outside of the criminal justice system.
Prior to the People v Johnson decision decided by the Appellate Division, Second Department, on October 18, 1993 (197 AD2d 638, supra), the District Attorney’s office had adopted a policy whereby no treatment or rehabilitative programs were being offered to defendants who appeared in Part 3. This approach was extremely prejudicial to the defendants who happen to appear in Part 3 instead of in other Criminal Term Parts where the rehabilitative programs were still being offered. If, following Mr. Smith’s successful completion of the Program, he had appeared in any other Part, the People would have offered him a favorable disposition. Because Mr. Smith appeared in Part 3, he was being denied this disposition. Now in the wake of the People v Johnson (197 AD2d 638, *1021 supra) decision, Mr. Smith would have to be incarcerated, unless the People agree to a nonjail resolution.
The system is sending a mixed message. On one hand the message is that rehabilitation/treatment are worthy goals which the People should encourage; some defendants will, therefore, get out of the criminal justice cycle and become assets to society. On the other hand the message is that breaking the cycle is not a worthy goal if the defendant appears in a particular Part; it is alright to "stick it” to defendants for reasons unknown to them and irrelevant to their case. Though a person is willing to change his life around, to adhere to the morals of our society, bureaucracy dictates no sympathy for a successful effort. Mr. Smith has successfully completed a 12-month rehabilitative program with the Fortune Society. During his time in the Program, Mr. Smith acquired skills which enabled him to seek out employment and he is expected to be employed by the United Parcel Service. He is no longer an addicted substance abuser. He has maintained a "good record” of attendance in his program and was "cooperative” throughout. The Fortune Society’s evaluation of the defendant indicates that he has "learned how to be a responsible and honest individual.” The court agrees with the recommendation made by the Fortune Society that Mr. Smith should receive a noncustodial disposition of this case.
If this court ignores the rehabilitative progress which Mr. Smith has made and continues to make, this action would send a signal to other defendants that socially rewarding rehabilitative programs are not worthwhile and society does not accept or recognize that a person can change. Mr. Smith has shown that alternatives to incarceration can be beneficial and socially rewarding. (See, e.g., People v Richards, supra [incarcerations are not always the answer to the problem of crime].) Further incarceration of Mr. Smith would ignore the substantial steps which he has made towards becoming a productive member of society.
The court has reviewed the factors enumerated in CPL 210.40 and balanced the competing interests of Mr. Smith and the society. The court recognizes the severity of the crimes for which Mr. Smith has been charged. But given Mr. Smith’s demonstration of good behavior and steps towards becoming a model citizen, a dismissal of the felony counts in the furtherance of justice is warranted.
*1022 The court will permit Mr. Smith to plead to the misdemeanor count of the indictment (criminal possession of stolen property in the fifth degree). Upon Mr. Smith’s plea to the class "A” misdemeanor, the court would sentence him to three years’ probation. In addition, the sentence would provide that if Mr. Smith violates his probation, he will be sentenced to the maximum sentence available for the violation of the probation.

. TASC is an acronym for Treatment Alternative to Street Crime. A TASC disposition consists of the successful completion of a treatment program of 12 to 24 months, the withdrawal of an earlier taken plea to the top felony count and a plea to an "A” misdemeanor, dismissal of the felony counts and a sentence of probation.

. While this motion was pending, the Appellate Division, Second Department, issued a decision which states that "[b]y postponing the defendant’s sentence after his plea of guilty, placing him with a drug treatment program, and promising him that it would vacate his plea if the defendant successfully completed the program, the court impermissibly placed the defendant on interim probation.” (People v Johnson, 197 AD2d 638.) The *1019 Appellate Division found that it was "improper for the court to impose an increased sentence when the defendant failed to successfully complete the program, without affording him an opportunity to withdraw his plea.” (Supra.) Since this decision, the People have stood firm on their policy of not offering any alternative to incarceration.