OPINION OF THE COURT
Diane Kiesel, J.
The defendant was imprisoned by a Family Court Judge for contempt. The contemptuous behavior was a series of telephone calls made to his estranged wife in violation of that Judge’s temporary order of protection. The issue before this court is whether the defendant can now be prosecuted criminally for aggravated harassment based on that behavior without triggering double jeopardy.
Procedural History
At the beginning of 2002, the Administration for Children’s Services (ACS) commenced a neglect proceeding against Mr. Allen in the Bronx County Family Court. While that petition was not before this court, it is undisputed that the proceeding was brought on behalf of the child Mr. Allen has in common with his wife, Maria Axiomakaros Allen. It is also undisputed that during the pendency of that matter a temporary order of protection was issued on behalf of Mrs. Allen and the child. That order was continued until the proceeding was finally disposed of by the Family Court on or about February 2, 2004.
During the course of the neglect proceeding, ACS filed two supplemental petitions pursuant to Family Court Act § 841 alleging that Mr. Allen, on separate occasions, violated the temporary order of protection. The first of these violation petitions apparently was filed on May 15, 2003, and the second, on or about November 7, 2003.[1]
With respect to the first petition, the Family Court proceeded to an inquest on November 25, 2003 when Mr. Allen failed to appear in court. The court found that on or about May 13, 2003 Mr. Allen willfully violated a temporary order of protection. The court vacated its finding, however, when Mr. Allen showed up in court later that day.
*260 The second, violation petition was filed by ACS on or about November 7, 2003 and it apparently alleged that on or about October 13, 2003, October 14, 2003 and October 23, 2003, Mr. Allen again violated the Family Court’s temporary order of protection. On February 2, 2004, an inquest was conducted with respect to this violation and other matters.
According to the minutes of the February 2, 2004 hearing, Mr. Allen again failed to appear. The Family Court reinstated its prior November 25, 2003 finding of a willful violation of the temporary order of protection and dismissed three family offense petitions Mr. Allen brought against his wife, her mother and father. The Family Court then heard testimony concerning the underlying neglect allegations. The Judge drew a negative inference from Mr. Allen’s failure to appear and entered a finding of neglect against him. An order of protection in favor of Mrs. Allen and the child was issued.
After disposing of the neglect allegations, the Family Court heard testimony with respect to the November 7, 2003 violation petition. Mrs. Allen testified that on the morning of October 11, 2003,[2] Mr. Allen called her at home and the child answered the phone. She picked up an extension and heard her husband tell the child he was coming to get him. Mr. Allen called again that same day at 7:30 p.m. He told Mrs. Allen, her parents and the child, all of whom had all picked up extensions, that he was coming to get his son. He also threatened to burn down the house and kill them. Mr. Allen called approximately 25 more times until 9:00 p.m.
Later that evening, Mrs. Allen called the police. They came to her home and she made a report. The following day she was contacted by a representative of the Bronx County District Attorney and learned her husband had been arrested. He was charged with criminal contempt in the second degree for allegedly violating a three-year order of protection issued by the Bronx County Criminal Court on April 18, 2001, not the Family Court order of protection. The Criminal Court order directed Mr. Allen to stay away from his wife and child and prohibited *261 him from making telephone calls to them. Mr. Allen was also charged with two counts of aggravated harassment in the second degree for making the calls. He is alleged to have committed these crimes on or about October 11, 2003 at approximately 6:30 p.m.
At the conclusion of Mrs. Allen’s testimony, the Family Court found Mr. Allen had willfully violated its temporary order of protection and entered a finding of harassment in the second degree. The court then issued a warrant for Mr. Allen who was sentenced to three months’ incarceration for each violation. On or about March 29, 2004, Mr. Allen was returned to court on the warrant and incarcerated for two consecutive three-month sentences.
Following Mr. Allen’s incarceration for the family offense violations, he proceeded to attack his punishment simultaneously on two fronts. He filed a motion to vacate his default in Family Court and he sought to have the criminal case dismissed on double jeopardy grounds. In May this court issued a motion schedule to address the issue of double jeopardy raised in the criminal matter pending before it. Moving and opposing papers were submitted but the matter was adjourned pending a decision from the Family Court on Mr. Allen’s motion to vacate his default. That motion was denied in a decision dated July 1, 2004. Mr. Allen was released on July 23, 2004.
On July 30, 2004 the People dismissed the criminal contempt charge. A new motion schedule was entered with respect to the issue of double jeopardy on the remaining count of the Criminal Court information, which is aggravated harassment in the second degree. The defendant was also granted permission to file a Clayton motion which is also before the court for consideration.
Double Jeopardy
The Double Jeopardy Clause of the United States Constitution protects against the imposition of multiple criminal punishments for the same offense. (Hudson v United States, 522 US 93, 99 [1997].) Moreover, it is undisputed that a disposition under Family Court Act § 841 for a proven violation of an order of protection is considered punitive in nature, thus triggering double jeopardy protections. (People v Wood, 95 NY2d 509 [2000]; People v Arnold, 174 Misc 2d 585 [Sup Ct, Kings County 1997].)
*262 The Supreme Court has established the Blockburger[3] or “same elements” test for determining whether dual proceedings against a criminal defendant violate the Double Jeopardy Clause. The rule is that “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.” (People v Wood, supra at 513 [internal quotation marks omitted], quoting Blockburger v United States, 284 US 299, 304 [1932].) In other words, if each of the offenses contains an element which the other does not, they are not the same offense and any claim of constitutional double jeopardy necessarily fails. (People v Bryant, 92 NY2d 216, 229 n 3 [1998].)
In applying the “same elements” or Blockburger test to this case, the court must consider the crime that was alleged to have occurred on October 11, 2003. That crime was aggravated harassment in the second degree, arising out of the 20 to 25 telephone calls made to Mrs. Allen and her son. The Family Court inquest stemmed from this same alleged criminal behavior. The overarching question becomes whether that crime, aggravated harassment in the second degree, contains an element which the offense adjudicated by the Family Court does not. Before the court can even get to that question, however, it must determine what offense the Family Court did adjudicate. The People argue it was a violation of the Family Court Act’s contempt provision. The defendant maintains it was aggravated harassment in the second degree.
*263 The Family Court’s Authority
Under Family Court Act § 1065, the Family Court is empowered to issue an order of protection in neglect proceedings. The subject temporary order of protection issued by the Family Court was issued under that provision. Pursuant to Family Court Act § 846, which is commonly referred to as a Family Court contempt provision (see People v Wood, supra at 514), a petition may be brought before the Family Court alleging a violation of such an order of protection. As already noted, ACS filed two violation petitions against Mr. Allen for behavior alleged to have taken place at two different times. The behavior we are discussing here, however, is the series of telephone calls made on October 11, 2003.
Upon the filing of a violation petition, Family Court Act § 846 (b) (ii), in pertinent part, states that the court may:
“(A) hear the violation petition and take such action as is authorized under [the] article; or “(B) retain jurisdiction to hear and determine whether such violation constitutes contempt of court, and transfer the allegations of criminal conduct constituting such violation to the district attorney . . . ; or
“(C) transfer the entire proceeding to the criminal court.”
On its face, Family Court Act § 846 (b) (ii) clearly does not permit the Family Court to adjudicate crimes under the guise of a violation of an order of protection other than to allow the court to determine whether a protective order was violated. (See People v Arnold, supra at 595.) Moreover, Family Court Act § 846 (b) (ii) (B), as set out above, unequivocally contemplates a second trial with respect to the substantive crime upon which the violation is based, otherwise, the statute would not specifically direct the transfer of criminal allegations to the District Attorney. The fact the Family Court Judge here did not refer allegations of criminal conduct, but heard the violation petition pursuant to Family Court Act § 846 (b) (ii) (A), did not thwart that legislative intent. Likewise, the fact the Judge heard testimony regarding harassment did not expand his statutory authority. That testimony simply provided the factual basis for the Judge’s ultimate determination that Mr. Allen willfully violated his temporary order of protection.
The Blockburger Test
This court concludes that the Family Court’s decision constituted a finding within its statutory authority that Mr. Allen’s *264 willful failure to obey its order was contempt of court. A finding other than contempt would have been well beyond the Family Court’s authority and extraneous to a finding of contempt under Family Court Act § 846.
In reaching its finding, the Family Court only had to consider the elements of contempt, that is proof that a “lawful order [was] . . . issued” and that Mr. Allen “willfully failed to obey [it].” (See Family Ct Act § 846 [b].) The elements of contempt do not include the elements of aggravated harassment in the second degree under Penal Law § 240.30; namely, that Mr. Allen communicated by telephone with his wife “with intent to harass, annoy, threaten or alarm” her. (Penal Law § 240.30.)
Thus, after applying the Blockburger or “same elements test” here, the court concludes the crimes the defendant is alleged to have committed are not barred by federal constitutional double jeopardy principles. The fact that the Family Court defined the contemptuous behavior as harassment does not translate to a conviction beyond a reasonable doubt by the Family Court Judge that Mr. Allen committed the crime of aggravated harassment in the second degree. Therefore, the punishment imposed on Mr. Allen was a sanction for his contempt of a lawful mandate of the Family Court and not a punishment for committing the crime of aggravated harassment in the second degree.
New York State’s Statutory Double Jeopardy Bar
The defendant also argues that dismissal of his criminal case is required by New York’s Criminal Procedure Law, specifically, CPL 40.20 and 40.30, which also provide double jeopardy protection. Under the Federal Constitution, double jeopardy protection arises only upon separate prosecutions for crimes, the statutory definitions of which include the same elements. New York’s double jeopardy statutes, however, protect against separate prosecutions for “two offenses based upon the same act or criminal transaction.” (People v Latham, 83 NY2d 233, 237 [1994] [emphasis added; internal quotation marks omitted]; CPL 40.20 [2].) The statutes accordingly embrace a broader and wider range of conduct that might be the subject of two proceedings. (Matter of Dutchess County Dept, of Social Servs. v James F., 141 Misc 2d 309, 312 [Fam Ct, Dutchess County 1988].)
Protection under the New York statutes is clearly greater with respect to the conduct which becomes the subject of two prosecutions and the defendant predictably argues that the charge of aggravated harassment does not fall within any of the *265 exceptions to New York’s same transaction rule. (See CPL 40.20 [2] [a], [b].) Before even considering these arguments, however, the question to be addressed is whether the violation of the temporary order of protection proceeding constitutes a “previous prosecution” within the meaning of CPL 40.30.
The procedural definitions of what constitutes a previous prosecution do not include the subject family offense proceeding. CPL 40.30 sets out what constitutes a previous prosecution and it provides that a person “is prosecuted for an offense, within the meaning of section 40.20, when he is charged therewith by an accusatory instrument filed.” (CPL 40.30 [1] [emphasis added; internal quotation marks omitted].) While it is well settled that a disposition under Family Court Act § 846 for a violation of an order of protection triggers federal double jeopardy concerns, such proceedings do not qualify as a prior prosecution under the New York statutory scheme because they simply are not commenced by an accusatory instrument.
A Family Court petition under Family Court Act § 846 is not an “accusatory instrument” as defined by CPL 1.20. (People v Arnold, supra at 595.) The fact that Family Court Act § 812 would have permitted prosecution for aggravated harassment in the second degree is irrelevant as the proceeding was brought pursuant to Family Court Act § 846. Moreover, as already discussed at great length above, Family Court Act § 846 specifically bars the Family Court from adjudicating the underlying behavior which gives rise to contempt of its orders. Accordingly, this court, in adhering to the plain language of New York’s applicable statutes, finds no bar to this criminal prosecution and the defendant’s motion to dismiss the aggravated harassment in the second degree charges as barred by double jeopardy is dismissed.
Defendant’s Clayton Application
Even where there is no legal basis for dismissal of a criminal action, as there is not in this case, the court, in its discretion, may dismiss the action in the furtherance of justice and fairness. (CPL 170.40 [1]; People v Clayton, 41 AD2d 204 [2d Dept 1973].) The use of this remedy depends solely upon the justice to be served by dismissal, rather than the legal or factual merits of the case or the guilt or innocence of the defendant. (Id. at 206.) A Clayton motion should be granted only where a defendant has demonstrated by a preponderance of the credible evidence that a compelling reason exists to warrant dismissal in the interest of justice. Where the defendant does not meet this *266 burden, the court may summarily deny the motion. (People v Schlessel, 104 AD2d 501, 502 [2d Dept 1984].)
In making its determination, “[t]he court, to the extent applicable, must examine and consider the merits of the defendant’s application in light of the factors enumerated in CPL 170.40 (1) (a) through (j), and balance the interests of the defendant, the complainant and the community.” (People v Watson, 182 Misc 2d 644, 650-651 [Grim Ct, Bronx County 1999].) It is not, however, necessary to engage in a point-by-point “catechistic” discussion of all 10 factors. (People v Rickert, 58 NY2d 122, 128 [1983].)
The thrust of defendant’s argument for dismissal is the fact he has already been punished for behavior that gave rise to the Family Court violation proceeding. He argues there is no compelling purpose in imposing a criminal sentence upon him. (See CPL 170.40 [1] [f|.) This argument ignores the fact he has only been punished for contempt of a Family Court order, not aggravated harassment in the second degree. More notably, however, it fails to appreciate that Family and Criminal Courts have concurrent jurisdiction. (See Family Ct Act § 115 [e].)
If the court were to dismiss the defendant’s criminal case, it would be ignoring the interests of the complainant and the community. Both undoubtedly would lose faith in the criminal justice system. (See CPL 170.40 [1] [h], [i].) Such a decision also would cause the public to view the system as unconcerned about safety among family members, especially where, as here, the crime underscores the issue of domestic violence, the seriousness of which cannot be outweighed by the defendant’s interest in avoiding prosecution. (See CPL 170.40 [1] [a], [g].)
The defendant has set forth no compelling reason to warrant dismissal and his Clayton application is therefore denied.

. The court was not provided with copies of these petitions. Unsigned copies of the Family Court Judge’s February 2, 2004 orders of fact-finding were, however, annexed as exhibits B1 and B2 to the People’s opposing papers and the court relies upon them in fleshing out the procedural history of the Family Court proceeding.

. The Family Court, in its February 2, 2004 order of fact-finding, concluded that Mr. Allen, on or about October, 13, 2003, October 14, 2003 and October 23, 2003, committed acts constituting the willful violation of its temporary order of protection. The testimony of Mrs. Allen, however, unequivocally speaks to the events of October 11, 2003, the date on which the criminal information alleges Mr. Allen committed aggravated harassment in the second degree.

. The “same-conduct test” relied upon hy the defendant for assessing double jeopardy concerns was overruled by the Supreme Court in United States v Dixon (509 US 688, 704 [1993]). The Court in Dixon issued a plurality opinion with respect to the application of the “same elements” test. Justices Scalia and Rehnquist both proffered their own version of the test, Justice Scalia calling for a more subjective application. The defendant argues that in his first set of moving papers he asked this court to apply the approach outlined by Chief Justice Rehnquist. In his second set of moving papers he urges Justice Scalia’s approach, arguing no controlling court has prohibited such an application and that it is consistent with the spirit and purpose of the double jeopardy bar.
Contrary to his assertion, the defendant in his first set of moving papers did not ask this court to apply Chief Justice Rehnquist’s version of the “same elements” test. He argued instead the “same elements” test inquires whether each offense contains an element not contained in the other and he finds support for that argument in People v Wood (supra), which is controlling and upon which this court also relies.