*1076 OPINION OF THE COURT
Thomas Farber, J.
Defendant Brian M. moves to dismiss the indictment against him in the interests of justice. The charges in this indictment stem from his conviction by plea of guilty for a drug sale that occurred two years ago, when he was 19 years old.
When he first came before me in May 2013, defendant was a confused young man with a drug addiction and serious mental health issues. Although he was working with the Andrew Glover Youth Program, his issues were so serious that even his lawyer and counselors at the Program told me that he might be better off with a “therapeutic remand.” By November 2013, his lawyer, his family and the Glover Program reported that he had deteriorated to the extent that they were worried that he was a danger to himself. At that time he was remanded for several weeks until Glover could find an inpatient program that could deal with his mental health and substance abuse issues.
Today, Mr. M. stands before me having completed the inpatient mental illness and controlled-substance abuse program and the Glover Program. He is enrolled in college. He is employed full time. He is drug free. He has a handle on his mental health issues. He has serious aspirations to complete college and go on to graduate education.
The People oppose the instant motion, asking that I sentence the defendant to the felony to which he pleaded, thus saddling him for the rest of his life with a felony conviction.
The motion is granted.
Background
On April 3, 2013, defendant was arrested for selling crack cocaine to an undercover police officer. At that time, his situation appeared bleak. Only 20 days earlier he had been sentenced on another indictment to a conditional discharge as a youthful offender for a similar charge. While that case was pending, defendant had been given several chances to complete various programs, one of which he was kicked out of for fighting. He had finally managed to fulfill his obligations with the help of the Andrew Glover Youth Program. As part of the *1077 sentence, he was mandated to continue with the Glover Program.[1]
When the defendant first appeared before me, his lawyer[2] and Angel Rodriguez, the Executive Director of the Glover Program, asked to approach the bench and told me, off the record, that they thought that defendant had a lot of promise, but that he seemed unable to make the types of decisions that had to be made to keep himself out of trouble. Although defendant had made bail, his lawyer and Mr. Rodriguez suggested to me that a “therapeutic remand” (a horrible phrase implying that a brief incarceration would be therapeutic) might be the only thing that would get defendant back on track. Since defendant had not violated the conditions of his release, I did not think it appropriate to remand him at that time. Instead, I tried to speak with him and convince him to cooperate with the Glover Program.
Defendant made some initial progress over the next few months. Mr. Rodriguez appeared with the defendant regularly in court and continued to express his belief in defendant’s potential, while at the same time expressing his concern that the defendant did not seem to have the discipline and maturity to deal with the various life and addiction issues he was facing.
Indeed, Mr. Rodriguez and defense counsel had a difficult, almost impossible, job. They had a client who had squandered his initial youthful offender adjudication and conditional discharge. Now he was indicted for a class B drug felony and had a good chance of going to state prison. They needed to convince the court and the District Attorney to give the defendant a second (or, depending on how you look at it, a third or fourth) chance. And they had to convince a client with a drug problem, mental health issues and (perhaps most importantly) a teenager’s brain riddled with immature concepts of what it meant to be a “man,”[3] to undergo a complete life transformation.
*1078 On November 22, 2013, the Glover Program told me that it was “nearly impossible” to work with defendant in his present condition. Defendant was supposed to obey a curfew at Glover, but he instead left a job at Subway and took a job that required him to be out until 3:30 a.m. Defendant was acting up in the Glover Program, cursing at the program managers and was given a summons for riding his bicycle on the sidewalk past his curfew. Defendant appeared to have serious mental health issues. Glover insisted that defendant sign a contract requiring him to abide by his curfew, be drug tested regularly, attend anger management classes, register for college and live at home without problems. In the interim they asked me to remand the defendant. I did.
I re-calendered the case for November 27, 2013, and released the defendant back to the Glover Program. He agreed to abide by the conditions in the “contract” with Glover.
Defendant’s mental health, however, deteriorated. The Program believed that he was using drugs, because he was refusing to be drug tested. He had stopped bathing. The Program thought he might be hallucinating; he had threatened suicide. Glover believed that he had become a danger to himself and others and needed immediate psychiatric help. The deterioration was obvious from defendant’s condition in court. He was staring at the defense table, almost shaking, refusing to engage. On December 17, 2013, I again remanded the defendant, this time for a psychiatric evaluation and for Glover to look for a residential program.
I adjourned the case from week to week, hoping that the Legal Aid Society’s social workers and the Glover Program could find an appropriate residential program; but finding a program for someone defendant’s age that would address all of defendant’s needs was more difficult than anticipated. On January 10, 2014, I was informed that the Promesa program (now Acacia) had a bed for the defendant. At this point the case was still an “open” case. The People requested that defendant plead guilty to the charge before I released him to the program. Defendant agreed to plead guilty.
*1079 Defense counsel and Angel Rodriguez asked the People if they would agree to a “repleader” type of disposition.[4] Mr. Rodriguez said, in substance,
“Frankly, I’m not sure he can do this. I’ve challenged him to do this, but I’m not sure he can. But if he can, Judge, let him have the incentive of not having a felony conviction on his record. A conviction for a kid from the projects, it’s a very serious issue for life. If we have an opportunity to make a young person from the projects law abiding, let’s give him a future and not saddle him with a felony conviction.”[5]
I encouraged the People to agree to this (as they have with other defendants), but the People adamantly refused.[6] I told the People to keep an open mind and mentioned the possibility that I could consider a motion to dismiss in the interests of justice.
Defendant pleaded guilty to criminal possession of a controlled substance in the third degree. The only promise that I made was that if he completed the program, returned to court and stayed out of trouble with the law I would give him a non-jail sentence. He was released to the residential program.
The initial report from the program in early February 2014 was guarded. The program reported that defendant minimized his substance abuse and at times did not take treatment seriously. By March, however, the program noted signs of significant improvement. I was told that he was “taking his treatment more seriously” and “participating in all groups and sessions and also giving reliable data regarding the nature and extent of his chemical abuse problem.” Defendant was seeing a psychiatrist biweekly and attending seven to eight groups a week. He continued to test negative for all controlled substances.
Defendant’s participation in the program continued to improve. By September 2014 he had entered Borough of *1080 Manhattan Community College (BMCC) full time. He had reestablished his relationship with his family. He continued to maintain his sobriety and was receiving weekly psychotherapy. Mr. Rodriguez asked that defendant remain in the program until he completed the 12 months, but noted that his progress was “amazing.”
Defendant completed the 12-month Acacia program. He did not have a single positive test for a controlled substance. He had no infractions. He continued to attend BMCC. He had secured full-time employment. The change in his appearance was dramatic. When I remanded him in December 2013, he was angry, distracted and entirely unrelated. When he appeared before me in April 2015, he was calm, related and focused. Defendant filed the instant motion to dismiss in the interest of justice.
Discussion
A Clayton motion should be granted only in those unusual circumstances where the defendant has demonstrated that compelling reasons exist to circumvent the strict letter of the law in order to avert a miscarriage of justice. (See People v Rickert, 58 NY2d 122, 126 [1983]; People v Clayton, 41 AD2d 204, 207 [2d Dept 1973].) In entertaining such a motion, the court must scrutinize the merits of the defendant’s application in light of the enumerated factors set forth in CPL 210.40, and weigh the respective interests of the defendant, the complainant and the community at large. (Id.)
To prevail on a Clayton motion, defendant must demonstrate some “compelling factor, consideration or circumstance” that would render the continued prosecution of this indictment unjust. (CPL 210.40 [1].) While I consider the specific factors which I am required to consider under CPL 210.40 (1) below, the central question is whether this is really the type of unusual case that requires judicial intervention to prevent what would otherwise be an injustice. I conclude that it is. In doing so I recognize that the legislature provides a sentencing scheme that permits first time felons under the age of 19 to get youthful offender adjudication, and that defendant has already benefitted from a youthful offender adjudication. But I am also mindful that this defendant was still young when he committed the instant offense; that this is a nonviolent crime; that he was struggling with mental illness and an addiction; that he lives in the projects and comes from a family with very modest *1081 means; that with the support of the Andrew Glover Youth Program he was finally able to complete a drug program, finally able to deal with his mental health issues, and, above all, finally able to take responsibility for his life, enter college and maintain full-time employment. I cannot see any point in rewarding defendant for this with a felony conviction.
I consider the specific factors which I am required to consider under CPL 210.40 (1) below.
CPL 210.40 (1) (c) and (e): Defendant has always admitted his guilt and does not allege any misconduct by law enforcement personnel.
CPL 210.40 (1) (d): Defendant’s parents are divorced and he lives with his mother in New York City Housing Authority “projects.” Defendant obtained his GED and is now attending college.
CPL 210.40 (1) (a), (b), (f), (g), (h) and (j): While all felony drug cases are serious, this is not a violent crime. Additionally, defendant, while not an “eligible youth” pursuant to CPL 720.10, was a young man with his own addiction and mental health issues. A felony conviction would have severe consequences for his ability to support himself in the future, and have a strong negative impact on his life.
In recent years there has been a dramatic shift from a punishment model in drug cases to a treatment model. The draconian sentences required by the Rockefeller Drug Laws have been abandoned. Mandatory prison sentences for first time “B” felony offenders have been eliminated, as have mandatory prison sentences for all offenders convicted of lesser drug felonies (except for those committed by predicate violent felons). Courts now have the power to offer “judicial diversion,” giving offenders the option of avoiding a felony conviction altogether by entering treatment. (See CPL 216.00.) In addition, we now realize that mental health issues that contribute to criminal behavior need to be treated and not just punished. Courts have also realized that when an individual has both drug addiction and mental health issues, treatment needs are more complicated.[7]
*1082 Dismissing this case would have minimal impact on public confidence in the criminal justice system and the safety or welfare of the community. While no one is able to predict what defendant will do in the future, he is gainfully employed and attending college. He has dealt with his mental health and addiction issues. He has family support. There is every indication that he can be and will be a productive citizen. I am certain that the “public” would be gratified to know that the system is flexible enough to deal with young offenders from inner-city neighborhoods who have significant mental health and addiction issues, but have the ability and genuine desire to become productive members of society.
Based on all of the facts and circumstances discussed herein, the indictment is dismissed.

. Defendant also had misdemeanor youthful offender adjudications for theft of services and marijuana convictions and a violation for harassment.

. Defendant was represented by Victor Castelli, Esq. of the Legal Aid Society, assisted by social workers, Sara Weston-Shea and Jesse Uhrman.

. For example, defendant stated on November 22, 2013:
“I am not going to sit and cry in front of you because I am a man, but I want to tell you that I know I’m capable . . . and, what I’m having trouble with is this, they are trying to help you so much, like when I go home my mom want to help me, but when I go to Angel’s program [Andrew Glover], they want to *1078 help me, but in all reality it is not. I just need to be encouraged. I don’t need help. . . . I’m willing to a hundred percent cooperate with the program, but it’s more or less like people pushing my buttons. I got elbows in my back, your Honor.”

. In other words, defendant would plead guilty to the felony, but if defendant completed the program and turned his life around, the People would permit defendant to replead to a misdemeanor.

. This is not a direct quote, since the discussion was largely off the record. Most of the words are taken from a statement by Mr. Rodriguez made at a later date.

. I summarized the position at the January 10, 2014 appearance as “we will not offer him a repleader, we will never offer him a repleader no matter what he does. You can give him whatever you want, but we are not offering him a misdemeanor no matter what.”

. While we have drug courts and mental health courts, defendants with dual diagnoses are much harder to place. Defendants are typically rejected from diversion if they have mental health issues. Mental health court requires the district attorney’s consent. Since defendant was able to enter treatment through Glover, he was not sent to diversion court, which would *1082 have required a lengthy adjournment and where he would almost certainly not have been accepted given his mental health issues.