Matter of P.C. (2005 NY Slip Op 52232(U))

[*1]

Matter of P.C.

2005 NY Slip Op 52232(U) [10 Misc 3d 1073(A)]

Decided on October 7, 2005

Family Court, Nassau County

Marks, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 7, 2005

Family Court, Nassau County
In the Matter of P.C., A Person Alleged to be a Juvenile Delinquent, Respondent.
D-00000-05

John G. Marks, J.
Under Docket No. D-00000-05, it is alleged that on or about March 12, 2005, at about 5:00 PM, at xxxx xxxxxx Avenue, xxxxxxxxxxxxx, New York, Nassau County, State of New York, the respondent, P.C., engaged in conduct, which if engaged in by a person sixteen (16) years of age or older, would constitute the crimes of Criminal Sexual Act in the First Degree, in violation of Penal Law §130.50(3), a class B Felony; Attempted Criminal Sexual Act in the First Degree, in violation of Penal Law §§110/130.50.(3), a class C Felony; Sexual Abuse in the First Degree, in violation of Penal Law §130.65(3), a class D Felony; Attempted Sexual Abuse in the First Degree, in violation of Penal Law §§110/130.65(3), a class E Felony; and Endangering the Welfare of a Child, in violation of Penal Law § 260.10(1), a class A Misdemeanor.
It is alleged that the respondent engaged and/or attempted to engage in oral sexual conduct with another person who is less than eleven years old; in that respondent put his mouth on the complainant's penis. The complainant is six years old.
Respondent having filed a motion with this Court, requesting an order, pursuant to FCA § 315.2, dismissing the herein petition in furtherance of justice, upon the grounds that a finding of delinquency would constitute or result in an injustice. The Presentment Agency has filed an Affirmation in Opposition to respondent's motion and respondent has served a Reply.
Upon review and consideration of all papers submitted in this proceeding, the Court makes the following findings:
HISTORY
[*2]
The facts in this matter are uncontroverted. The complainant is a six (6) year old boy and the respondent is a twelve (12) year old boy, whom were alleged to have been caught in a sexual act.
Respondent was born to a cocaine-addicted mother and adopted by J. and N. C. days after his birth. The respondent is a special needs child and since birth has experienced both developmental and medical difficulties. Since infancy, respondent has received physical, occupational, speech, feeding, and vision therapies. Respondent suffers from hypotonia (decreased muscle tone) and encopresis (chronic constipation). He has been classified by his local school district as "Multiply Disabled" and attends an integrated educational program which includes speech, therapy and counseling. Respondent has an I.Q. of 69, which places him in the Mildly Retarded Range of Intellectual Functioning.
In May, 2005, this Court ordered an out-patient evaluation of the respondent, in accordance with Family Court Act §322.1 (hereinafter "FCA") and Criminal Procedure Law §730.30 (hereinafter "CPL"), to determine whether the respondent is an "incapacitated person" within the meaning of the law [FCA §301.2(13)]. The respondent was evaluated by two (2) court-appointed mental health professionals, Tracy Grossman, Ph.D. and Allen Reichman, M.D., from the Nassau County Department of Mental Health, Mental Retardation and Developmental Disabilities; Forensic Services, at the Nassau County University Medical Center, New York. Their reports were submitted to the Court on or about June 14, 2005. The reports opined that the respondent was an "incapacitated person" stemming from cognitive difficulties, and lacks the capacity to understand legal proceedings. It was further indicated in the reports that treatment would not improve respondent's ability to comprehend his legal situation.
On June 21, 2005, a competency hearing was commenced pursuant to FCA §322.2. Both mental health professionals testified as to the contents of their reports and as to their individual observations during their examinations of the respondent. The hearing was completed on June 23, 2005. After reviewing the reports and hearing all the testimony, this Court found the respondent to be an incapacitated person and therefore, incompetent to stand trial. The matter was adjourned to July 13, 2005, for a probable cause hearing, in accordance with FCA §322.2(3). On that date, the Court, respondent's law guardian and the Presentment Agency participated in a very lengthy conference in an attempt to determine the best way to proceed in this matter. The conference failed to produce a solution of sound mind for both sides in light of respondent's inability to understand the pending legal proceedings. The matter was again adjourned to August 4, 2005.
On the next court date, the Presentment Agency's witnesses, including the complaining witness, were not available. The law guardian made an application to submit the herein motion to have the petition dismissed in the interest of justice and in accordance with FCA §315. A motion schedule was set. The probable cause hearing has been held in abeyance pending the determination of the herein motion.
LEGAL ARGUMENTS
 The law guardian contends that regardless of whether the court finds there was probable cause to believe the respondent committed a misdemeanor or he committed a felony, respondent [*3]would still be placed in a residential setting, away from his parents' care. The respondent's counsel asserts that due to respondent's special needs and developmental deficiencies, his best interests and needs would be at risk, in that: (1) the removal of the respondent from his parents, educational setting and counseling would prove to be extremely detrimental to him emotionally and physically; (2) there is no appropriate facility in which this particular respondent could be placed to meet all his needs; (3) the respondent has always been under the care of his parents and he is highly dependent on them emotionally; (4) removal of respondent from his family would cause him to suffer depression and suicidal acting out; and (5) respondent's integrated school program and regular counseling would be disrupted.
Respondent's counsel contends that respondent is not a risk to society and has already engaged in a sex offender risk assessment and counseling. Additionally, that removing respondent from his present setting would not serve the goal of "rehabilitation," but instead would cause great harm. In support of respondent's motion are the affidavits of Barbara Goldenberg Libov, Ph.D. [Respondent's Exhibit "A"]; respondent's parents, J. and N. C. [Respondent's Exhibit "B"]; and Peter A. Crist, M.D. [Respondent's Exhibit "C" ]. It should be noted that the affidavits of both Dr. Libov and Dr. Crist were accompanied by extensive curriculum vitae.
Dr. Libov is a psychologist at North Shore LIJ Schneider's Children's Hospital in New York, with the Child and Adolescent Outpatient Department of the hospital. Dr. Libov indicates that this department provides a treatment program for sexual acting out youth and adolescents. The doctor states that she met with and examined respondent on July 19 and 25, 2005. Additionally, she spoke with respondent's parents; she consulted, by phone, with respondent's treating physician, Dr. Peter Crist; she reviewed the triennial evaluation from respondent's school district, she read a letter from the United Cerebral Palsy Association; and she reviewed an occupational therapy report from Dove Rehab Services.
Dr. Libov's assessment of the respondent is that he is mildly retarded and has developmental, physical, cognitive and emotional deficiencies. She describes respondent as "a follower," "not aggressive," and "has difficulty asserting himself to get out of negative situations."
Dr. Libov opines that respondent's history does not present with any risk factors towards sexually acting out and, other than the disparity in age between respondent and the complainant, there are "no other significant factors that place P. as the initiator." She indicates that the probability that respondent forced another child into a sexual situation is minimal. Dr. Libov further indicated that placing respondent into a residential treatment facility could cause respondent to suffer from feelings of abandonment, which would be overwhelming for him and could result in acting out behavior. She did recommend that respondent receive specialized treatment surrounding issues of sexually appropriate behaviors; and that weekly counseling with respondent and parents has already been initiated.
The affidavit of Dr. Peter Crist indicates he is a psychiatrist and has been in private practice since 1983. He is an Associate Clinical Professor with the Department of Psychiatry of Robert Wood Johnson Medical School in New Jersey. Dr. Crist states that he has been respondent's treating psychiatrist since 1999 and respondent participates in interactive psychotherapy weekly.
Dr. Crist states that respondent is mildly retarded, very attached and highly dependent on his family. Like Dr. Libov, he indicates that respondent is a "follower" and it is "highly unlikely [*4]that P. would have initiated the sexual acts." Dr. Crist shares similar opinions as Dr. Libov, in that: removal of respondent from his family would be extremely detrimental to his emotional well-being; "would have a psychologically devastating effect;" respondent would "undoubtedly" suffer from feelings of abandonment; and "would likely cause depression and suicidal acting out behavior."
Dr. Crist indicates that in their counseling sessions, the issue of sexual appropriate/inappropriate acts is being addressed; and the respondent continues to be cooperative in sessions.
The affidavit by respondent's parents reiterates that it would be in respondent's best interest to remain in his present environment, removal of respondent from his environment would be detrimental, and the respondent receives therapeutic services from two therapists. The C.s state that they will insure respondent's weekly attendance to his therapy sessions.
In their opposition, the Presentment Agency contends that the matter should not be dismissed and that the Court should proceed to the probable cause hearing. The Presentment Agency bases their opposition upon the seriousness and circumstances of the crime; the need to protect the community; the extent of harm caused to the complainant; and the history, character and condition of respondent.
The Presentment Agency contends there is no evidence that the complainant initiated the sex act, and that even if he had, it would not justify or provide a defense to respondent's actions.
The Presentment Agency asserts that because the complainant is a 6 year old child, subjected to unwanted sexual contact, the harm caused is immeasurable and likely to have life-long consequences.
The next concern raised by the Presentment Agency is the history, character and condition of the respondent. Because respondent is described as a "follower," the Presentment Agency fears that he may be "lead astray" again in the future.
Finally, due to respondent's inability to understand the consequences of his actions, the Presentment Agency is concerned that respondent may pose a danger to other children in his community.
THE LAW
Section 301.2(13) of the Family Court Act defines an "incapacitated person" as:
"a respondent who, as a result of mental illness, mental
retardation or developmental disability as defined in
subdivision twenty, twenty-one and twenty-two of section
1.03 of the mental hygiene law, lacks capacity to understand
the proceedings against him or to assist in his own defense."
The relevant portion of the Mental Hygiene Law §1.03, states:
21. " Mental retardation' means subaverage intellectual
functioning which originates during the developmental
period and is associated with impairment in adaptive
behavior."
Once a Court determines a respondent is an "incapacitated person," it shall schedule a probable cause hearing in conformity of Section 325.2 of the FCA; [FCA §322.2 (3)]. If after the hearing the Court finds there is probable cause to believe the respondent has committed [*5]a misdemeanor, then "the respondent shall be committed to the appropriate commissioner for a reasonable period not to exceed ninety days. The court shall dismiss the petition on the issuance of the order of commitment." [FCA §322.2 (4)]
Where, after a hearing, the Court finds there is probable cause to believe the respondent has committed a felony, "it shall order the respondent committed to the custody of the commissioner of mental health or the commissioner of mental retardation and developmental disabilities for an initial period not to exceed one year from the date of such order" [FCA §322.2 (5) (a)].
Pursuant to FCA §315.2, on motion, a court may at any time dismiss a petition in furtherance of justice as a matter of judicial discretion where there exists compelling further considerations or circumstances which clearly demonstrate the finding of delinquency or the continuance of the proceeding would constitute or result in injustice. The statute delineates seven (7) factors for the court to examine in determining whether or not such compelling further consideration or circumstances exist [FCA §315.2(1)(a-g)].
Although the statute grants the trial court broad discretion to dismiss a petition in the furtherance of justice, the reason for the dismissal must be "readily identifiable and sufficiently compelling;" [see, Matter of Kwane M., 121 AD2d 635 (2nd Dept 1986)]. Matter of Tristen C., 156 Misc 2d 1007, 595 NYS2d 635 (Fam Ct, Kings Co,(1984), illustrates an example where the trial court dismissed a juvenile delinquency petition in the interests of justice. The Court concluded that it was a " rare and unusual case [that] cries out for fundamental justice beyond the confines of conventional considerations'" [Tristen, Id.; quoting People v. Harmon, 181 AD2d 34, 586 NYS2d 922 (1st Dept 1992)]. The statute seeks to strike a balance between the needs and interest of the respondent and the interests of the community. In juvenile delinquency proceedings, the court's ultimate goal is rehabilitation, not retribution, and the safeguarding of the community [Tristen, supra; Matter of Carmel E., 57 NY2d 431 (1982)].
ANALYSIS
The Court would like to preface the forthcoming decision and order by stating that it is completely aware of the anguish imparted on parties and their families, and the sensitive nature of the issues at hand.
Neither the medical testimony given during the competency hearing, nor the medical evidence submitted by respondent, depicts respondent as a predator, aggressive, or a risk to the community. Quite an opposite picture is painted of respondent. He is described as a "follower," unable to assert himself in getting out of negative situations, and not likely to be an initiator of sexual acts.
The Presentment Agency asserts that because both Doctors Libov and Crist described respondent as a "follower" he will "ultimately be lead astray again." In fact, the Presentment Agency's choice of words, "lead astray," infers just what the two therapists opined, that it is not likely that respondent would have initiated the act.
Being a "follower" is not a trait which necessitates retribution. Under the present circumstances, this character trait requires rehabilitation. Although being a follower could cause respondent future problems, this and similar issues can be addressed on an out-patient basis as well. [*6]Additionally, respondent's daily lifestyle provides for a great deal of supervision and monitoring.
The Court is aware that respondent's counseling with Dr. Libov for sex acts was a direct result of this proceeding. However, it does demonstrate that respondent's parent's are responsive to taking corrective measures in order to prevent any further incidents. Arguendo, even if there was a finding after a hearing, sex offender counseling would have ultimately commenced at some point in time.
The Court must consider the respondent's history, character and condition. No one has placed respondent's character into question. Respondent's history is founded upon his condition. His history/condition is that of a child, who since birth, has suffered from cognitive and physical difficulties and who has been under treatment almost as long. He resides with two parents who are fully cognizant of respondent' s problems and seem to have engaged in a very hands-on approach in assisting him.
The respondent is a student who is classified with multiple disabilities, and as such, he is probably placed in an inclusion classroom setting with a very low student/teacher ratio, and highly supervised. Respondent has been participating in weekly psychotherapy with Dr. Crist for almost five (5) years, which provides supervision of his emotional well-being. Additionally; respondent's therapy with Dr. Libov, for treatment relating to sexual conduct, provides an additional monitoring mechanism.
During the competency hearing, both Dr. Grossman and Dr. Reichman did testify that, even with treatment, the respondent would be unable to achieve competency to understand the consequences of his actions. However, this is not to say that respondent is unable, through treatment, to learn not to do, avoid or stop certain acts because they are wrong. The analysis is akin to teaching a toddler not to put objects in their mouth. A toddler does not comprehend the concepts of choking or germs (consequences), but they can be taught to stop the act (because it is wrong).
The seriousness of the crimes charged are obviously disturbing and unsavory, especially in view of the complainant's tender age. However, the circumstances of the alleged crime are troublesome as well. There has been no determination as to whether respondent or complainant initiated the act, there is just an allegation. Notwithstanding the disparity in age between the complaint and respondent (approximately 6 years), their emotional and social maturity may be on equal footing due to respondent's cognitive and emotional difficulties. It raises the issue as to whether either one of these children were able to comprehend the iniquitous nature of the act. This statement is not intended to minimize any harm caused or justify anyone's actions.
However, a determination of who "initiated" the act could have some bearing on the eventual outcome after a hearing, and needs to be given consideration in ascertaining whether these proceedings could result in an injustice.
The Court is unable to address the extent of the harm caused by the acts alleged. It is clearly conceivable that the complainant and his family have suffered some harm. There is no doubt that any person subjected to unwanted sexual contact could suffer long-term, if not short-term, consequences. The Presentment Agency's papers are silent as to any crisis counseling or treatment the complainant may have sought as a result of the incident alleged. Nor do the papers speak to the potential impact a hearing may have on the complainant if he is called to testify or relive the events alleged. It begs the question as to whether a hearing could potentially cause more harm to the complainant in the end.
[*7]
After a hearing, whether or not there was probable cause to believe respondent committed a misdemeanor or felony, he would still be placed in a residential treatment center for a period of time. While in placement, the respondent would receive therapeutic services and counseling. As stated earlier, counseling relating to appropriate and inappropriate touch (sex acts) would likely be incorporated as part of respondent's treatment. However, the respondent is already participating in psychotherapy and receiving sex counseling. Additionally, the medical opinions of Doctors Libov and Crist indicate the removal of respondent from his home could cause feelings of abandonment (due to respondent's lack of capacity to understand the legal proceeding), depression, and suicidal acting out.
Presently, whether treatment is conducted on an in-patient or out-patient basis, reformation will only change respondent's rote behavior, and will not impact his ability to conceptualize "why" some behaviors are unsuitable. However, placement in a residential facility may prove to cause more harm than good. Instead of aiding in respondent's reformation, it could unravel years of therapy and services, which is clearly not in respondent's best interests. Further, there has been no showing that there is an appropriate residential setting fit to accommodate and treat respondent's multiple needs.
It should be noted that three of the five crimes charged require a showing that the respondent acted with "intent" or "knowingly" [see, PL §§110/130.50(3), 110/130.65(3) and 260.10(1)]. It has already been determined by this Court that the respondent is an incapacitated person within the meaning of the law. The Presentment Agency would be faced with a difficult burden to prove all the elements of the above-referenced charges. Even in a situation where the Presentment Agency is left to proceed on the remaining two charges, they would face difficulty in establishing during a hearing that it was, in fact, the respondent who initiated the sex act. Especially in view of the expert testimony which will be offered by respondent, and where the key witness, the complainant, is only six years of age.
Upon careful review of the case law and facts, the Court cannot see anything fruitful stemming from a probable cause hearing in this matter. In fact, the Court envisions an injustice, more trauma for the parties and their families, and the potential for a second victim if this matter were to proceed further.
For the complainant, K.K., and his family, moving toward a fact-finding hearing will only force this child and family to continually relive disturbing events which may be best left behind them, with the appropriate counseling. Because of his young age, the complainant may have a better chance to, with counseling, move past these events in a healthy manner.
In the respondent's case, his incapacity to understand legal proceedings, coupled with the potential of residential placement, may create turmoil and undermine any efforts made to rehabilitate his acts. At present, respondent participates in two individual therapies, is supervised at school and home, and is already experiencing restricted movement within the community due to his deficits and treatment programs.
It is therefore;
ORDERED, that respondent's motion to dismiss the petition in this matter, is granted in accordance with FCA §315.2.
This constitutes the Decision and Order of the Court.
[*8]
ENTER
______________________________
Hon. John G. Marks
Judge of the Family Court
Dated: October 7, 2005
Received in Court on: _____________________
DCA: ________________________________________________________________________
Respondent's Law Guardian: ______________________________________________________