[863 NYS2d 455]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CONSTANTINE QUADROZZI et al., Respondents.

Second Department, August 19, 2008

**APPEARANCES OF COUNSEL**

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove, Richard Farrell* and *Seth M. Lieberman* of counsel), for appellant.

*Sullivan Gardner, P.C.*, New York City (*Brian Gardner, Steven Montgomery* and *Daniel Graber* of counsel), for respondents.

**OPINION OF THE COURT**

McCarthy, J.

In this appeal, which arises out of a criminal prosecution for

alleged violations of article 17 of the Environmental Conservation Law (hereinafter the ECL), the primary issue, which is one of first impression, is whether a local district attorney may, pursuant to ECL 71-0403, initiate such a criminal prosecution without the New York State Department of Environmental Conservation (hereinafter DEC) first authorizing or instituting the criminal prosecution. We conclude that ECL 71-0403 vests a local district attorney with such authority. We further find that the evidence that the District Attorney presented to the grand jury with respect to those counts of the indictment charging the defendants with violations of ECL 17-0701 and 17-0803 was legally sufficient to sustain counts 21 through 42 of the indictment.[1] Accordingly, we reverse the order insofar as appealed from and reinstate counts 1 through 11 and 21 through 42 of the indictment.[2]

The People allege that in August 2003, Basil Seggos, an investigator with Riverkeeper, an environmental organization, observed wastewater runoff into Newtown Creek, which flows into the East River and which forms a boundary between the Counties of Queens and Kings, emanating from the Queens shore site of the defendant Quality Concrete of New York (hereinafter Quality). By notice dated October 27, 2003, Riverkeeper informed Quality of its intent to commence a private civil action against Quality for allegedly discharging contaminants into Newtown Creek in violation of the federal Clean Water Act (33 USC § 1251 *et seq.*). Riverkeeper also sent the DEC a copy of its notice of intent to sue Quality. Seggos contacted the office of the Kings County District Attorney (hereinafter the Kings County DA), and on September 22, 2004, Seggos and representatives from the Kings County DA visited the Quality site and took water samples. On December 9, 2004, the Kings County DA, without the DEC first authorizing or instituting the criminal prosecution, convened a grand jury to investigate whether Quality had committed criminal violations of ECL article 17.

According to Seggos's grand jury testimony, the defendant Constantine Quadrozzi, vice-president of Quality and its chief environmental compliance officer, acknowledged receipt of Riverkeeper's notice of intent to sue, admitted to Seggos that

---

1. As discussed infra (at 98), the Supreme Court found legally sufficient evidence supported counts 1 through 20 of the indictment, but that the evidence was legally insufficient to support counts 21 through 42 of the indictment.

2. The People do not appeal from so much of the order as dismissed counts 12 through 20 of the indictment.

Quality had a "waste water management problem," and assured Seggos that Quality would resolve it. Seggos further testified that at no time during his observations of Quality's site did he see a sign indicating that Quality had a valid State Pollutant Discharge Elimination System (hereinafter SPDES) permit, which such permit holders are required to post.

Either independently or because of Riverkeeper's actions, the DEC began its own review of Quality's discharge into Newtown Creek. In connection with that review, George Hyde, an assistant engineer for the water division of the DEC, as he later testified before the grand jury, visited Quality's site on August 12, 2003, met with Quadrozzi, gave him an application for a storm water discharge permit, and advised him that Quality should install hay bales or silt fences to prevent sediment in storm water runoff from being discharged into the creek. According to Hyde, Quality was issued a state permit to discharge storm water into the creek effective October 19, 2004. The permit itself indicated that discharge of materials other than storm water required a separate SPDES permit.

The grand jury subsequently issued a 42-count indictment against Quality and Quadrozzi, charging that between June 9, 2003 and December 8, 2004, they violated (1) ECL 17-0501 (11 counts) by, with criminal negligence, discharging matter into Newtown Creek in contravention of water quality standards, (2) ECL 17-0505 (nine counts) by, with criminal negligence, using an outlet for discharging contaminants into state waters, and (3) ECL 17-0701 (11 counts) and 17-0803 (11 counts) by knowingly using an outlet and discharging industrial waste and pollutants from that outlet without a DEC-issued permit or in violation of such permit.

The defendants moved to dismiss the indictment on several grounds, including, that (1) the Kings County DA lacked geographical jurisdiction to prosecute, (2) the Kings County DA breached a plea agreement, (3) the Kings County DA presented legally insufficient evidence and instructions to the grand jury, and (4) the interests of justice required dismissal. The People opposed the motion, and after oral argument, at the court's request, the parties briefed the issue of whether the Kings County DA had the authority to prosecute an ECL violation without the New York State Attorney General (hereinafter the AG) or the DEC first authorizing or instituting a criminal prosecution. At the court's invitation, the AG and the DEC submitted to the court a joint letter arguing that ECL 71-0403 vested

local district attorneys and the DEC with concurrent authority to initiate ECL prosecutions such that local district attorneys did not have to wait for the DEC to first authorize or institute an action.

In the order under review (*People v Quadrozzi*, 13 Misc 3d 261 [2006]), the Supreme Court held that the Kings County DA had geographical jurisdiction pursuant to CPL 20.40 (4) (c) (*id.* at 269), but nevertheless dismissed the indictment on several grounds. The court held that the Kings County DA lacked authority to prosecute this action because, pursuant to ECL 71-1933 (9), only the DEC could initiate such an action. The Supreme Court noted that, parallel to the Kings County DA's criminal proceeding, the DEC had been conducting its own enforcement proceeding against Quality, as indicated by settlement documents between Quality and DEC (13 Misc 3d at 266). Relying on ECL 71-1933 (9) and (10), which provide in pertinent part that "[a]ll prosecutions under this section shall be instituted by the [DEC] and shall be conducted by the Attorney General" and which permit the AG to authorize a local district attorney to prosecute any such action, the court held that "with respect to criminal liability for violations of ECL 17-0501, 17-0505, 17-0701 and 17-0803, the Attorney General was . . . the exclusive authority to prosecute criminally with all the powers and duties of a [local] District Attorney, but had the authority to request the [local] District Attorney to prosecute in his stead" (13 Misc 3d at 267 [internal quotation marks omitted]).

Further, the Supreme Court limited the reach of ECL 71-0403, enacted in 1980 specifically to overrule *People v Long Is. Light. Co.* (41 NY2d 1049 [1977]), which had affirmed the dismissal of an ECL air pollution prosecution initiated by a local District Attorney on the ground that the local District Attorney lacked authority to commence such an action without a referral from the AG (*see People v Long Is. Light. Co.*, 88 Misc 2d 123 [1976]). The Supreme Court held that ECL 71-0403 "is of *general* application and was incorporated into ECL article 71, which covers enforcement procedures and penalties for all of the various substantive provisions contained in other articles of the ECL[,] [and thus] does not trump the more *specific* limitation contained in ECL 71-1933 respecting enforcement of article 17" (*People v Quadrozzi*, 13 Misc 3d at 267 [emphasis added]). According to the Supreme Court, ECL 71-1933 (9) and (10) "expressly provides that '[a]ll prosecutions' for violations of titles 1 through 11 and 19 of article 17 must be 'instituted by

the [DEC]' and 'conducted' by the [AG]. ECL 71-0403 permits both the [AG] and the [local DA] to 'initiate or conduct' a prosecution 'on behalf of the [DEC]' " (13 Misc 3d at 268). Additionally, relying on ECL 71-1927, which concerns enforcement of titles 1 through 11 and title 19 of article 17 of the ECL, the Supreme Court found that the term "institute," as used in ECL 71-1933, must be read to require that the DEC act first before a local DA may initiate a criminal proceeding (13 Misc 3d at 270). The Supreme Court determined that, at a minimum, and as indicated by the legislative history of ECL 71-0403, DEC first had to determine that "a criminal prosecution for a violation of DEC's standards is warranted" (*id.* at 271). Further, the Supreme Court held that while the term "institute," as used in ECL 71-1933, was not precisely defined, the term "suggests that the [DEC] Commissioner would act as a complainant, having investigated and evaluated the nature and quality of the violations"; in contrast, the terms "initiate or conduct," as used in ECL 71-0403, "relat[e] to prosecutorial authority to file an accusatory instrument, make a grand jury presentation and litigate a criminal prosecution on behalf of the complainant" (13 Misc 3d at 272). Thus, the Supreme Court dismissed the entire indictment on the ground that ECL 71-0403 did not vest a local DA with authority to initiate or conduct an ECL prosecution without the DEC first authorizing or instituting such a prosecution.

The Supreme Court also addressed other grounds proffered by the defendants to dismiss the indictment, but it rejected a number of the defendants' arguments. First, it held that legally sufficient evidence existed to find that Quadrozzi may have knowingly violated the ECL (13 Misc 3d at 275). Second, it found legally sufficient evidence against both defendants regarding the alleged violations of ECL 17-0501 (9 counts) and 17-0505 (11 counts) set forth in counts 1 through 20 of the indictment (13 Misc 3d at 275). Third, the Supreme Court rejected the defendants' contention that the Kings County DA breached a plea agreement with them, finding that since the parties had never specifically agreed to a plea agreement, there was, in effect, no plea agreement to breach (*id.* at 276).

However, the Supreme Court held that the evidence supporting the alleged violations of ECL 17-0701 (11 counts) and 17-0803 (11 counts) was legally insufficient, finding that the Kings County DA invited the grand jury to speculate as to what the discharge was and failed to submit "affirmative evidence that

defendants lacked a permit on the dates charged" (13 Misc 3d at 274). It further agreed with the defendants that the interests of justice warranted dismissal of the indictment, as the defendants had acted in good faith in installing, at an expense of approximately $350,000, an environmental control system in the reasonable belief that doing so would avoid an indictment (*id.* at 277-278). Moreover, the Supreme Court concluded that Quality was now fully compliant with the ECL, but that the community would be harmed by a criminal conviction of Quality since Quality might be rendered unable to secure government contracts, forcing it to lay off employees, which would result in, among other things, lost tax revenue (*id.* at 276-278).

The Kings County DA appeals, arguing that ECL 71-0403 vests it with the authority to initiate or conduct an ECL prosecution without the DEC first authorizing or instituting such a prosecution and seeking reinstatement of counts 1 through 11 and 21 through 42 of the indictment, which allege violations of ECL 17-0501, 17-0701, and 17-0803. We agree, and accordingly reverse the order insofar as appealed from.

In determining whether a local district attorney has the authority to initiate or conduct a criminal prosecution of an alleged ECL violation, without the DEC first authorizing or instituting such a prosecution, two statutes are at issue. First, ECL 71-0403, entitled "[d]elegation of criminal enforcement authority," provides:

> "Whenever the attorney general is authorized under this chapter to prosecute a criminal proceeding on behalf of the [DEC], such authority may in the discretion of the attorney general be delegated to the [DEC], to initiate or conduct any such prosecution. Provided, however, that in any event the district attorney of the county in which the violation occurs may initiate or conduct any such prosecution."

Second, ECL 71-1933 provides, in pertinent part:

> "9. All prosecutions under this section shall be instituted by the [DEC] or the commissioner and shall be conducted by the Attorney General in the name of the people of the state of New York.
>
> "10. In the prosecution of any criminal proceeding under this section by the Attorney General and, in any proceeding before a grand jury in connection

therewith, the Attorney General shall exercise all the powers and perform all the duties which the District Attorney would otherwise be authorized or required to exercise or perform, and in such a proceeding the District Attorney shall exercise such powers and perform such duties as are requested of him by the Attorney General."

■ A number of factors compel us to reverse the Supreme Court's determination that the Kings County DA had no authority to initiate this prosecution without the DEC first instituting or authorizing the action. Preliminarily, as the Supreme Court also observed, we note that ECL 71-0403 (L 1980, ch 738, § 1) was specifically enacted to overrule *People v Long Is. Light. Co.* (41 NY2d 1049 [1977], *affd for reasons stated below* 88 Misc 2d 123 [1976]), in which an air pollution prosecution was dismissed solely because the AG's authority under ECL 71-2105[3] was held to displace a local District Attorney's authority to initiate a criminal prosecution for an alleged ECL violation (*see* Bill Jacket, L 1980, ch 738). With that background, we first turn to whether, facially, the relevant statutes support a finding that a local district attorney must first wait for the DEC to institute or authorize a criminal prosecution for an alleged ECL violation.

The first sentence of ECL 71-0403 provides that "[w]henever the attorney general is authorized under [chapter 43-B of the Consolidated Laws] to prosecute a criminal proceeding on behalf of the [DEC], such authority may in the discretion of the attorney general be delegated to the [DEC], to initiate or conduct any such prosecution." The reach of ECL 71-0403 is not limited to the air pollution prosecution at issue in *Long Island Lighting*, but encompasses any alleged criminal ECL violation. Further, inasmuch as that first sentence concerns the AG's authority to prosecute alleged ECL violations, it implicitly refers to ECL 71-1933 (9), which provides, in pertinent part, that "[a]ll prosecutions under this section shall be instituted by the [DEC] and shall be conducted by the Attorney General." Significantly, ECL 71-1933 (9) makes no reference to local district attorneys. Thus, the first sentence of ECL 71-0403 and ECL 71-1933 (9) collectively provide that the AG and DEC must coordinate

---

**3.** ECL 71-2105, entitled "[c]riminal liability for violations," provides in subdivision (3) that "[a]ll prosecutions under this section shall be instituted by the commissioner and shall be conducted by the Attorney General in the name of the people of the State of New York."

prosecutions of alleged ECL criminal violations. In contrast, the second sentence of ECL 71-0403 is neither dependent on the sentence preceding it nor on ECL 71-1933 (9), as it sets forth that, *"[p]rovided, however, that in any event* the district attorney of the county in which the violation occurs may initiate or conduct any such prosecution" (emphasis added). In other words, ECL 71-0403, consistent with the legislative rationale for its enactment, specifically vests local district attorneys with authority to initiate or conduct prosecutions of alleged ECL violations independently of the AG and DEC.

Under the circumstances, the fact that the two amendments to ECL 71-1933 in 1988 (*see* L 1988, ch 360, § 13) and 2003 (*see* L 2003, ch 62, part C, §§ 38, 39), respectively, both well after the 1980 enactment of ECL 71-0403, did not alter subdivision (9) is of no moment, since on its face ECL 71-0403 specifically vests local district attorneys with independent authority to initiate and conduct ECL criminal violations, an issue that ECL 71-1933 (9) does not at all address. Thus, contrary to the Supreme Court's analysis and conclusion, ECL 71-0403 is more specific than ECL 71-1933 (9) in that it authorizes a local district attorney, even without prior DEC authorization or initiation, to "initiate or conduct any" ECL prosecution (*see* Weinberg, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 71-0403, 2008 Pocket Part, at 2).

Our conclusion that a local district attorney and the AG have concurrent jurisdiction over ECL 71-1933 violations is consistent with the differing scopes of the two offices' prosecutorial authorities. As the Court of Appeals has explained, "the District Attorneys have plenary prosecutorial power in the counties where they are elected, [and in contrast] the Attorney-General has no such general authority and is *without any prosecutorial power* except when specifically authorized by statute" (*People v Romero*, 91 NY2d 750, 754 [1998] [internal quotation marks omitted]; *see* County Law §§ 700, 927; Executive Law § 63 [3]; *People v Gilmour*, 98 NY2d 126, 131-132 [2002]; *Della Pietra v State of New York*, 71 NY2d 792, 796-797 [1988]). As such, concluding, as the defendants argue, that a local district attorney's prosecutorial authority is limited by ECL 71-0403 and 71-1933 in favor of the AG's broader authority to prosecute alleged ECL violations, runs contrary to the fact that the AG's prosecutorial powers is a subset of the prosecutorial powers of local district attorneys.

The legislative history of ECL 71-0403 also supports our conclusion. In support of the bill's enactment, the DEC

explained, in pertinent part, that the purpose of the bill was to authorize district attorneys to initiate and conduct prosecutions of ECL violations:

> "Purpose of bill: Authorizing attorneys with the [DEC] to initiate and conduct in court any civil and criminal proceeding under the [ECL] and authorizing district attorneys to initiate and conduct any criminal proceeding under the [ECL]. . . .

> "Summary of provisions of bill: The bill provides that whenever the Attorney General is authorized to initiate or conduct a civil or criminal action or proceeding on behalf of the [DEC], the [AG] may exercise his discretion to delegate this authority to the [DEC]. The bill also provides that the district attorney in the county in which a violation of the [ECL] occurs may initiate or conduct any criminal prosecution. . . .

> "Prior legislative history: . . . As passed in its present form . . . the bill makes it clear that district attorneys have the right to initiate and conduct criminal prosecutions despite the fact that the [AG] might be inclined to delegate this authority to the [DEC]. . . .

> "Arguments in support of bill: . . .

> "The bill gives district attorneys the unquestioned right to prosecute criminally violations under the [ECL] . . . This bill clarifies the law, making clear the Legislature's intent to give district attorneys such power. . . .

> "Reasons for recommendation: . . . [T]o make it clear that the district attorneys are authorized to conduct criminal prosecutions of [ECL] violations" (Mem in Support, Richard Persicopa, Deputy Commr and Gen Counsel, June 19, 1980, Bill Jacket, L 1980, ch 378, at 15-17).

Similarly, the AG also submitted a statement in support of the enactment of ECL 71-0403:

> "This bill is necessitated by the recent decision of the Court of Appeals in People v Long Island Lighting Co., 41 NY2d 1049 (1977), holding that District

Attorneys lack authority to prosecute air pollution violations. The Attorney General is without the resources to institute prosecutions in areas of the state remote from his offices. At present the legal authority of District Attorneys and department attorneys to commence such cases is unclear as a result of the Long Island Lighting Co. decision. This bill would end that impediment to effective law enforcement in these areas" (Mem in Support, Robert Abrams, Attorney Gen, Bill Jacket, L 1980, ch 378, at 6).

In a subsequent memorandum to the Governor, the AG explained, "[t]he bill provides that criminal prosecutions under the ECL may be brought in addition by the district attorney of the county in which the violation occurs" (Mem to Governor, July 2, 1980, Bill Jacket, L 1980, ch 378, at 18).

Further, as then-Assemblyman (and now DEC Commissioner) Alexander Grannis, who along with then-Senator James Lack introduced the bill, explained on the Assembly floor, if a local district attorney and the DEC commenced parallel criminal actions, the courts would decide which action would proceed, without mentioning that a local district attorney would be precluded if he or she failed to first obtain DEC authorization pursuant to ECL 71-1933 (9). Accordingly, for the reasons set forth above, we conclude that the Kings County DA had the authority, pursuant to ECL 71-0403, to prosecute this action even though the DEC did not first authorize or institute such a prosecution.

Having concluded that the Kings County DA had authority to initiate this prosecution, we turn to whether dismissal was warranted in the interests of justice pursuant to CPL 210.40. Dismissal of an indictment in the interest of justice must be "exercised sparingly" (*People v Martinez*, 304 AD2d 675, 676 [2003]), that is, only "in those rare cases where there is a 'compelling factor' which clearly demonstrates that prosecution of the indictment would be an injustice" (*People v Anthony C.*, 269 AD2d 402, 402 [2000], quoting CPL 210.40 [1]; *see People v Bolton*, 224 AD2d 436 [1996]; *People v Hudson*, 217 AD2d 53, 55 [1995]). Put differently, in exercising its discretion to dismiss an indictment pursuant to CPL 210.40, the trial court "must engage in a sensitive balancing process and conclude that there exist compelling factors clearly demonstrating that prosecution upon the indictment would constitute an injustice" (*People v Hudson*, 217 AD2d at 55 [internal quotation marks omitted]; *see People v Rickert*, 58 NY2d 122, 127 [1983]).

We note that it would have been advisable for the Supreme Court to have held a hearing before ruling on that branch of the defendants' motion which was to dismiss the indictment in the interests of justice (*see* CPL 210.40, 210.45; *People v Clayton*, 41 AD2d 204, 207 [1973]; *see also People v Diaz*, 97 NY2d 109, 113 [2001]; *People v Rahmen*, 302 AD2d 408, 409 [2003]). However, remittal of this issue is not necessary since the record before us, which includes the parties' submissions to the trial court in support of and in opposition to the defendants' motion, is sufficient for us to determine whether the trial court improvidently exercised its discretion in concluding that the interests of justice warranted dismissing the indictment.

■ We reject the defendants' contention that there was any serious misconduct by the Kings County DA (*see* CPL 210.40 [1] [e]). On this point, the defendants contend that they installed an environmental control system at the Quality site at a cost of approximately $350,000, with the intent to avoid a criminal indictment. However, in support of their motion, the defendants proffered no evidence of a specific promise by the Kings County DA that if Quality installed the environmental control system, the Kings County DA would forgo a criminal prosecution (*see People v Curdgel*, 83 NY2d 862 [1994]; *People v Hunt*, 306 AD2d 497, 499 [2003]; *People v Roberts*, 214 AD2d 592, 593 [1995]). In any event, independent of any criminal prosecution by the Kings County DA, Quality arguably had other motives to implement the environmental control system. For example, a failure to remediate the situation left Quality vulnerable to criminal penalties, i.e., a prosecution by the AG and/or the DEC, and civil liabilities, including Riverkeeper's private civil lawsuit to recover penalties for alleged violations of the federal Clean Water Act. Further, the indictment alleges serious misconduct. Specifically, counts 21 through 42 of the indictment, alleging that the defendants violated ECL 17-0701 and 17-0803, by knowingly contaminating Newtown Creek, are class E felonies (*see* ECL 71-1933 [4]), and Quadrozzi allegedly admitted to Seggos, when Riverkeeper first contacted Quality about the discharge, that he knew Quality had a "waste water management problem" (*see* CPL 210.40 [1] [a], [b], [c]). Moreover, contrary to the defendants' contention, it is not entirely clear that Quality would be barred from pursuing all government contracts if it is convicted, and thus, the potential harm to the community predicted by the defendants is mere speculation (*see* CPL 210.40 [1] [h]).

Further, we also disagree with the Supreme Court's conclusion that the Kings County DA presented legally insufficient evidence to the grand jury on the issue of whether the defendants violated ECL 17-0701 and 17-0803. In determining whether to dismiss an indictment for legal insufficiency, consideration is given as to "whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury" (*People v Jennings*, 69 NY2d 103, 114 [1986]; *see People v Jensen*, 86 NY2d 248, 251-252 [1995]; *People v Sanford*, 24 AD3d 572, 573-574 [2005]; *People v Cheathem*, 239 AD2d 595, 596 [1997]). "In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Bello*, 92 NY2d 523, 526 [1998]; *see* CPL 70.10 [1]; *People v Mills*, 1 NY3d 269, 274 [2003]; *People v Banks*, 42 AD3d 574, 575 [2007]). Accordingly, review of the evidence focuses on "whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes"; innocent inferences potentially drawn from circumstantial evidence are irrelevant "as long as the Grand Jury could rationally have drawn the guilty inference" (*People v Deegan*, 69 NY2d 976, 979 [1987]; *see People v Banks*, 42 AD3d at 575; *People v Bradley*, 232 AD2d 574, 575 [1996]).

Here, the People presented legally sufficient evidence that the defendants violated ECL 17-0701 and 17-0803. Seggos and Hyde both testified that they observed discolored discharge emanating from Quality's output pipe. Quadrozzi later allegedly admitted to Seggos that Quality had a "waste water management problem," and in conjunction with Seggos's testimony that he never observed a sign indicating that Quality had an SPDES permit, it was reasonably inferrable that Quality knowingly discharged contaminants into Newtown Creek without an SPDES permit or in excess of whatever SPDES permit the DEC may have issued to it (*see* ECL 17-0701, 17-0803, 71-1933 [3], [4]; *accord State of New York v City of Yonkers*, 35 AD3d 719, 720 [2006]; *People v M&H Used Auto Parts & Cars, Inc.*, 22 AD3d 135, 142-143 [2005]). At this stage of the proceedings, the People were not required to prove that Quality did not have a SPDES permit.

For all of the reasons set forth above, we reinstate counts 1 through 11 and 21 through 42 of the indictment and remit the matter to the Supreme Court, Kings County, for further proceedings.

Accordingly, the order is reversed insofar as appealed from, on the law, those branches of the defendants' omnibus motion which were to dismiss counts 1 through 11 and 21 through 42 of the indictment charging them with violations of Environmental Conservation Law §§ 17-0501, 17-0701 and 17-0803 are reinstated, and the matter is remitted to the Supreme Court, Kings County, for further proceedings.

FISHER, J.P., RITTER and DILLON, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, those branches of the defendants' omnibus motion which were to dismiss counts 1 through 11 and 21 through 42 of the indictment charging them with violations of Environmental Conservation Law §§ 17-0501, 17-0701 and 17-0803 are reinstated, and the matter is remitted to the Supreme Court, Kings County, for further proceedings.