The People of the State of New York, Appellant,
against
Dennis Sant and Kathleen Sant, Respondents.




Joseph P. DePaola, Esq., for appellant.
Steven Felsenfeld, Esq., for respondent.

Appeal from an order of the Justice Court of the Town of Carmel, Putnam County (Joseph J. Spofford, Jr., J.), dated January 21, 2016. The order granted defendants' motion to dismiss the accusatory instrument in the furtherance of justice.




ORDERED that the order is affirmed.
Dennis Sant and Kathleen Sant own a residence in the Town of Southeast (the Town), Putnam County. In 1989, the Town building department granted a permit to the Sants to erect a "pole barn" on their property. In 1990, Dennis Sant informed the Town building inspector that the structure would be used as a barn and "studio." When the barn was completed, at least part of it was occupied by Dennis Sant's brother as a residence. The Sants did not obtain a variance or other permits for a residence in the pole barn. Their property was zoned for single-family residential use. However, in 1997, the property was reclassified as multi-family for tax purposes. As a result, the Town collected a substantial amount of real estate taxes on the property over and above what it would have collected had the property remained classified for single-family residential use.
In 2008, the Town notified the Sants that their property did not comply with various [*2]provisions of the Town of Southeast Code (the Code). Dennis Sant wrote to the building inspector, indicating that he would do whatever needed to be done, and he retained an engineer. In addition, the building inspector apparently informed Dennis Sant that modifications to his septic system would be necessary, and that a permit from the Putnam County Department of Health was required to do so. Dennis Sant arranged for the work to be done. Apparently, the Town would not grant a variance until the health department issued a permit.
It is undisputed that, as of 2013, more than 20 years after the "pole barn" had been completed, the property was still not in compliance with the Code. In an information dated September 26, 2013, the Sants were charged with two counts of violating Code former § 138-17 (permitting an accessory structure to be used and occupied as a dwelling), two counts of violating Code § 54-8 (constructing and permitting the use of an accessory structure as a residential dwelling unit in violation of a building permit and without a proper building permit), and one count of violating Code § 54-11 (permitting an accessory structure to be used as a residential dwelling without obtaining a certificate of occupancy). After the Justices in the Towns of Southeast and Patterson recused themselves, the case was transferred to the Justice Court of the Town of Carmel.
On July 27, 2015, the Sants moved to dismiss the accusatory instrument in the furtherance of justice pursuant to CPL 170.30 (1) (g) (see CPL 170.40). In an affirmation in support of the motion, the Sants' counsel argued that the Town had "not been evenhanded with regard to the Sants [vis-a-vis] other [similarly] situated residents of [the Town of] Southeast as to zoning of certain real property," and in "1997 [the Town of] Southeast de facto granted the Sants['] request that the Property should be regularized as one that was a [multi-family] property, when it unilaterally changed the [classification] of the Property from a single family" status to a multiple-family status. The Sants therefore concluded that the matter had been amicably resolved. Moreover, counsel argued that the Sants were not the only people with whom the Town had made the same or similar accommodations, even granting certificates of occupancy to other properties with non-conforming circumstances, including a building containing a sign-shop and residence. During the next decade, the Sants had "the quiet enjoyment of the Property."
In an affidavit in support of the motion, defendant Dennis Sant added that, in 1989, he and his wife had applied for, and obtained, a building permit to erect a pole barn and studio. The Town was informed that the studio was intended to serve as a residence for Dennis Sant's brother. A contemporaneous writing thanked the building inspector at that time for her guidance in assisting the efforts for a portion of the barn to be used as a residence for Dennis Sant's immediate family. Dennis Sant alleged that he and his wife had spent $23,000 to construct the pole barn and $10,000 to expand the property's septic field prior to 1997. He asserted that numerous homes in the community had been constructed as summer bungalows that had been converted to year-round homes "on lots that could never be made to conform to" the Town Code or Putnam County Health Department Code. Dennis Sant claimed that, in 2008, the Town had "suddenly" decided that the property did not conform to the Code. The Sants were denied a variance and an approval by the Putnam County Health Department, despite borrowing approximately $33,000 and hiring an engineer to propose plans to improve the septic system. [*3]Correspondence and documents were exchanged in 2008, 2009 and 2010, with respect to the alleged deficiencies regarding the property and the Sants' retention of experts.
The People, citing to the 10 factors set forth in CPL 170.40 (1), argued that there was no compelling factor demonstrating that a conviction would result in an injustice. In fact, defendants did not even refer to the statutory factors in their motion papers. The alleged violations of the Code were serious. Case law holds that a change in real estate property tax classification and permitted use under a zoning code are separate issues, and one is not binding on the other. Current and future residents of the Town are harmed when Code provisions are not enforced, and thus, the extent of the harm caused by the offense does not warrant a dismissal in the furtherance of justice. While the People conceded that the Sants have no prior criminal history, the People asserted that that fact alone does not warrant the granting of defendants' motion (see People v Kelley, 141 AD2d 764, 765 [1988]). The Sants did not present evidence of selective or unequal enforcement of the Code. The Sants, according to the People, did not obtain a permit from the health department, and never applied for a variance.
A reply affirmation by defendants' counsel repeated the arguments made earlier, but discussed the 10 factors of CPL 170.40 in detail.
In a written decision and order dated January 21, 2016, the court set forth the 10 factors of CPL 170.40, and found that:
"In the instant action the court finds compelling factors present warranting dismissal and is ultimately persuaded by the extraordinary time, money and efforts devoted by Mr. and Mrs. Sant seeking to comply with the Town and Health Department requirements. The initial Building Permit Application specifically referred to a pole barn and studio. Mr. Sant's subsequent letter to [the Building Inspector in 1990] reiterated his intention to use the addition as a habitable space. Mr. Sant made it abundantly clear at each and every stage in the protracted history of this addition that he was prepared to comply with the Town as well as with the Health Department. When he received notices from the Town years later regarding the addition he immediately responded and his response was always in substance that he was prepared to do whatever was required to accommodate the Town's requirements. At each stage this was met with resistance from and impediments imposed by the Town. . . . In addition the court is mindful of the fact that for 11 years Mr. and Mrs. Sant's property was taxed at a multi family rate and during this period of time the Town refrained from any enforcement proceedings with respect to any alleged violation. While the Town's conduct does not result in a finding of a de facto regularization' of the property it is a consideration in deciding the instant motion to dismiss in the interest of justice.
When considering the merits of defendant's application in light of the factors enumerated at CPL § 170.40, and balancing the interests of Mr. and Mrs. Sant, the Town of Southeast, and the community, the Court finds that a termination of the prosecution in [*4]favor of the defendants is warranted."
On appeal, the People contend, among other things, that neither the money spent prior to obtaining approval, nor the change in real property tax classification of the Sants' property warrants the dismissal of the accusatory instrument in the furtherance of justice. The People further argue that "the Town did nothing to impede the Sants" and that the Sants' willingness to comply with the Code does not warrant dismissal.
"The discretionary authority to dismiss an [accusatory instrument] in furtherance of justice should be exercised sparingly and only in those rare cases where there is a compelling factor which clearly demonstrates that prosecution of the [instrument] would be an injustice" (People v Sherman, 35 AD3d 768, 768 [2006] [internal quotation marks omitted]; see also People v Candelaria, 50 AD3d 913 [2008]). Put differently, while a court has the discretion to dismiss an accusatory instrument in the furtherance of justice, that discretion is neither absolute nor uncontrolled (see People v Wingard, 33 NY2d 192, 196 [1973]; People v Kelley, 141 AD2d at 765). In exercising its discretion to do so, a court must engage in a sensitive balancing of the interests of the individual against those of the State (see People v Quadrozzi, 55 AD3d 93, 103-104 [2008]; People v Kelley, 141 AD2d at 765; People v Clayton, 41 AD2d 204, 208 [1973]). Furthermore, the use of such a drastic remedy depends on principles of justice, beyond the confines of conventional considerations of legal or factual merits of the charge or even on the guilt or innocence of the defendant (see People v Belge, 41 NY2d 60, 62-63 [1976] [Fuchsberg, J., concurring]; People v Stewart, 230 AD2d 116, 120-122 [1997]; People v Clayton, 41 AD2d at 206).
Here, the Justice Court correctly dismissed the accusatory instrument in furtherance of justice. The Justice Court considered the merits of the Sants' motion in light of the 10 factors set forth in CPL 170.40. 
The Town collected additional taxes after classifying the property as multi-family, yet did not charge the Sants with violations when the pole barn had been completed or in 1997, when the classification of the property had changed. It is noted that the Sants have no criminal record, and there is nothing indicating any kind of negative history. Dennis Sant's brother has, apparently, been living in the pole barn for well over 20 years. We further note that there is no explanation why the Town revisited this matter in 2008, and decided to prosecute 23-year-old Code violations in 2013. The record shows that, after the Sants had been notified of the violations in 2008, they hired an engineer and took steps to comply with the Town's requirements. While it is not clear whether the Town and/or the County Health Department impeded the Sants, the granting of the motion to dismiss was warranted in this case.
Upon consideration of the circumstances of this case and the factors set forth in CPL 170.40 (1), individually or collectively, we find that the extraordinary remedy of dismissal of the accusatory instrument in furtherance of justice was warranted (see People v Candelaria, 50 AD3d at 914; People v Sherman, 35 AD3d at 768; cf. People v Castaneda, 40 Misc 3d 1207[A], [*5]2013 NY Slip Op 51070[U] [Brockport Just Ct 2013]). This is a "rare" and "unusual" case that "cries out for fundamental justice beyond the confines of conventional considerations" (People v Belge, 41 NY2d at 62-63; see also People v Hudson, 217 AD2d 53, 55-56 [1995]).
Accordingly, the order is affirmed.
Iannacci, J.P., Tolbert and Brands, JJ., concur.
Decision Date: May 23, 2017