| **Matter of Logan R.** |
| --- |
| 2025 NY Slip Op 31035(U) |
| April 2, 2025 |
| Family Court, Kings County |
| Docket Number: Docket No. D11842-24 |
| Judge: Alan Beckoff |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

P R E S E N T :

Hon. Alan Beckoff

-------------------------------------------------------x

**In the Matter of**        :

   Docket No: **D11842-24**

  **LOGAN R.,**

   **DECISION ON MOTION**

**A Person Alleged to be**
**A Juvenile Delinquent,**

     **Respondent.**  :

-------------------------------------------------------x

NOTICE: PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL MUST BE TAKEN WITHIN THIRTY DAYS OF RECEIPT OF THE ORDER BY THE APPELLANT IN COURT, THIRTY-FIVE DAYS FROM THE MAILING OF THE ORDER TO THE APPELLANT BY THE CLERK OF THE COURT, OR THIRTY DAYS AFTER SERVICE BY A PARTY OR LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.

Karen Milano, Assistant Corporation Counsel,
 for the Presentment Agency
Evan Bloom, Legal Aid Society, for Respondent Logan R.

Beckoff, J:

   The principle known as Chekhov's gun is keenly illustrated by a 12-year-old holding a loaded Mossberg 12-gauge pump action sawed-off shotgun – at some point the gun is going to go off.   Here, the Court is presented with the aftermath of this scenario and is asked to decide whether the petition charging the 12-year-old with

- 1 -

second degree manslaughter, criminally negligent homicide, criminal possession of a weapon, and related offenses should be dismissed in the furtherance of justice.

At a recent court appearance, the Court issued an order granting the respondent's motion for this relief. As required by Family Court Act § 315.2 (2), the Court stated its reasons for dismissal of the petition on the record. The Court's reasoning is further explained in the decision that follows.

**Background**

The Presentment Agency commenced this juvenile delinquency proceeding by filing a petition charging Logan R., then age 12, with twelve counts that included manslaughter in the second degree, criminal possession of a weapon in the second degree, assault in the second degree, criminally negligent homicide, and reckless endangerment in the second degree.[1] The petition contained seven supporting depositions, six from officers of the New York City Police Department and one from a New York City Medical Examiner. Also attached to the petition were a ballistics report and the victim's death certificate.

On the morning of June 2, 2024, Logan and his 15-year-old cousin Jasai were in Jasai's apartment. Somehow they got their hands on the aforementioned shotgun. According to contemporaneous news reports, the shotgun had been left under a bed by Jasai's father, who was out of town.[2] As Logan later told Lieutenant Padilla, "I

---

[1] Four days before the Presentment Agency filed the petition, it had filed a pre-petition application pursuant to F.C.A. § 307.4 seeking a remand of the respondent following his arrest. Respondent's counsel did not object to the Court's jurisdiction. After hearing argument from both sides, the Court released the respondent to his mother pending further proceedings.

[2] Although the firearm was unlicensed, not to mention unlawfully cut down, the Kings County District Attorney's Office ultimately declined to prosecute him. It was also reported that the boys' grandparents were present but in a different part of the apartment.

shot my cousin by accident…I had the gun I was taking it away to put it down…it was on safety I tried to take it away to put it down…I tried to tell him to put it down…I tried to put it down…it went off."  When Lt. Padilla asked where the gun was, Logan said, "(I)t's on the bed, I left it there."

When the police arrived at the apartment, they found Jasai lying motionless on the couch with a large open wound on his chest.  Lt. Padilla found a brown and black shotgun on a bed inside one of the bedrooms.  Officers Penaranda and Bisogno tried performing chest compressions on Jasai before an ambulance arrived.  Emergency Medical Services transported Jasai to Brookdale Hospital, where he was declared dead.

Detective Yovino recovered the shotgun, which he observed to be loaded with five rounds of 12-gauge shotgun shells plus one spent shell casing.  He took it to the 73rd Precinct, where Officer Kassienauth vouched it.  Detective Stack of the NYPD Firearms Analysis Section tested the shotgun and ammunition and found them to be operable.  Medical Examiner Sean Kelly concluded that Jasai's cause of death was a shotgun wound to the chest.

Following Logan's initial appearance, the Court held several conferences to handle motions and to monitor the Presentment Agency's disclosure of voluminous discovery materials, which included police reports, NYPD bodycam video, crime scene photos, and recordings of 911 calls.  The Presentment Agency did not oppose the motion by Logan's counsel for a pre-trial *Huntley* hearing regarding the statements Logan made to the police and Logan's counsel did not oppose the Presentment Agency's motion for Logan to have a swabbing for a DNA sample to compare to the DNA recovered from the shotgun.

- 3 -

**Respondent's Motion to Dismiss**

Logan's counsel moved to dismiss the petition in the furtherance of justice or, alternatively, for an adjournment in contemplation of dismissal. Going through the criteria listed in F.C.A. § 315.2(1), which the Court will address in more detail below, counsel acknowledged that the crime was obviously serious (albeit accidental) and caused extensive harm, and that there was no misconduct, serious or otherwise, in the police investigation and arrest of Logan or in the Presentment Agency's filing of the petition. But counsel argued that the other statutory criteria – Logan's history and character, his needs and best interests, the need for community protection, and anything else showing there was no useful purpose served by a finding – merited dismissal of the petition.[3]

Counsel presented letters from Logan's relatives and teachers attesting to his good character at home and school but particularly emphasized his struggle with the symptoms of post-traumatic stress disorder and grief. Attached to the motion was a detailed forensic assessment from Dr. Emily Haney-Caron, a clinical psychologist who evaluated Logan and concluded that he needed "trauma-informed mental health treatment, including further consideration of (his) risk for PTSD[.]" Exhibit A to Respondent's motion, p. 25. Dr. Haney-Caron also noted: "Logan's symptoms of traumatic stress and suicidal ideation may be worsened by formal court involvement and moving forward to [an] adjudicatory hearing." *Id.*, p. 30. One of the other attachments to the motion was a letter from Princess Hosein, a licensed mental health counselor, stating that Logan has been consistently attending therapy for months.

---

[3] The criteria for an adjournment in contemplation of dismissal are not delineated in F.C.A. § 315.3 but the outcome is the same – an "ultimate dismissal of the petition in the furtherance of justice."

[* 4]

The Presentment Agency countered that dismissal of the petition in the furtherance of justice was inappropriate given the seriousness of the crime and the harm – a fatality- that was caused.  It noted that Logan's counsel conceded there was no misconduct of any kind in the arrest of the respondent or presentation of the petition.  But the thrust of the Presentment Agency's argument was that Logan's apparent good character and community support were not sufficient grounds for dismissal; that it wasn't given an opportunity to cross-examine Dr. Haney-Caron, so the Court should not yet consider her conclusion about Logan's post-traumatic stress disorder; that Logan's needs and best interests could be better addressed with a dispositional order; and that the seriousness of the offense showed the need for community protection.

**Decision**

Family Court Act § 315.2(1) provides:

> A petition…may at any time be dismissed in furtherance of justice when, even though there may be no basis for dismissal as a matter of law, such dismissal is required as a matter of judicial discretion by the existence of some compelling further consideration or circumstances clearly demonstrating that a finding of delinquency or further proceedings would constitute or result in injustice.  In determining whether such compelling further consideration or circumstances exist, the court shall, to the extent applicable, examine and consider, individually and collectively, the following:

> a) the seriousness and circumstances of the crime;
> b) the extent of harm caused by the crime;
> c) any exceptionally serious misconduct of law enforcement personnel in the investigation and arrest of the respondent or in the presentment of the petition;
> d) the history, character, and condition of the respondent;
> e) the needs and best interest of the respondent;

f) the need for protection of the community; and

g) any other relevant fact indicating that a finding would serve no useful purpose.

"Dismissal in the furtherance of justice is an extraordinary remedy that must be employed sparingly, that is, only in those rare cases where there is a compelling factor which clearly demonstrates that prosecution...would be an injustice." *Matter of James JJ.*, 206 AD3d 1091, 1092 (3ʳᵈ Dept., 2022), quoting *People v. Quadrozzi*, 55 AD3d 93, 103 (2ⁿᵈ Dept., 2008) (internal quotation marks omitted).[4] "At least one of these factors must be readily identifiable and sufficiently compelling to support the dismissal." *Matter of Carlief V.*, 121 AD2d 640, 641 (2ⁿᵈ Dept., 1986); *see also People v Rickert*, 58 NY2d 122, 128 (1983).

There is no dispute here about the first three factors; the crime was obviously serious, it caused extensive harm, and there was no law enforcement or prosecutorial misconduct. On the next three factors, the Court agrees with Respondent's counsel that Logan's history, character, and condition, as well as his needs and best interests, do not warrant continued prosecution of this case, nor do the circumstances of this case demonstrate that Logan presents a threat to the community.

Logan has no history of arrests or anything else of concern in his background. The numerous testimonials to his good character in his community and in his school are really beyond question. Of course, the same can be said for many of the youths who come through the Family Court every day. As for Logan's condition, though, this is not something the Court sees regularly. Upon review of Dr. Haney-Caron's

---

[4] Criminal Procedure Law § 210.40 (dismissal of an indictment in the furtherance of justice) has some additional factors that do not apply in juvenile delinquency proceedings under Article 3 of the Family Court Act but the analysis is the same. *See* Bogacz, New York Juvenile Delinquency Practice, 3ʳᵈ ed., § 1-15, p. 119 (2010).

detailed psychological assessment of Logan, the Court accepts her conclusion that Logan has symptoms consistent with post-traumatic stress disorder, that he presents a low risk for future violent behavior and "general offending relative to other youth," Ex. A., p. 24, that he would benefit from "trauma-informed mental health treatment," *Id.*, p. 25, and that continued court proceedings would aggravate his post-traumatic stress and suicidal ideation.

The caselaw in this area is not extensive and what there is mostly deals with much less serious charges than homicide and weapons possession. *See, e.g.*, *Matter of Steven C.*, 93 AD3d 91 (2nd Dept., 2012) (third degree criminal trespass); *Matter of Cerino P.*, 296 AD2d 868 (4th Dept., 2002) (sexual misconduct); *Matter of Kevin S.*, 190 Misc2d 80 (Fam. Ct., Clinton Co., 2001) (endangering the welfare of a child).

But there is one case that does stand out and is directly on point: *Matter of Tristan C.*, 156 Misc2d 1007 (Fam. Ct., Kings County, 1993).[5] While obviously not an appellate decision that would otherwise give it weightier consideration, this case is still instructive because its fact pattern is so disturbingly similar to what happened here. Both cases involve young cousins who were also close friends, an adult in the home left a loaded gun under a mattress (or bed), the shooting was accidental, and the family was deeply split by the tragedy. Tristan, like Logan, was diagnosed with post-traumatic stress disorder and depression. His psychiatric evaluation recommended long term therapeutic placement. To get him the necessary treatment, his mother placed him in a therapeutic treatment facility on a PINS petition.[6] The Family Court dismissed the petition in the furtherance of justice.

---

[5] In the interest of full disclosure, I should mention that I represented the Presentment Agency.

[6] According to the court's decision, the New York City Department of Social Services, the predecessor agency to the current Administration for Children's Services, would not accept a voluntary placement due to the pending delinquency proceeding.

Here, the Presentment Agency argues that Tristan's diagnosis, while similar to Logan's, resulted in that respondent's entry into an in-patient psychiatric treatment facility, while Logan is only being seen as an out-patient by a licensed mental health counselor. The Court is not persuaded that this is a significant distinction. Although the Court is only a layman on the subject of mental illness, it is safe to assume that mental health treatment for juveniles who have undergone a traumatic experience has changed in the 30-plus years since Tristan C.'s case.

As the Court said at the outset, when a 12-year-old has a loaded shotgun, it is likely to be used. There is no shortage of medical literature on adolescent brain development in juveniles, especially as it pertains to firearms, and how youths are often incapable of responsible decision-making and engage in impulsive behavior.[7] But there are just as likely to be cases of armed juveniles involving recidivism, indicia of an intentional act, or someone not diagnosed with or in treatment for post-traumatic stress disorder. These cases will have to be dealt with on their own merits.

The Court is not reaching the factor listed in F.C.A. § 315.2(1)(g) but notes that there might be a useful purpose in making a finding in cases like this: the deterrent effect that a finding would have, not so much on juveniles, who don't always appreciate the consequences of their actions, but on the adults whose irresponsible actions can lead to tragic outcomes for the children in their households.

Nevertheless, this Court believes that it is manifestly unjust where the tragic events of this situation commenced with the incredibly irresponsible lapse in

---

[7] *See*, *e.g.,* Dustin A. Pardini and Edward Mulvey, "Special Section Introduction: Revitalizing Developmental Research on Adolescent Gun Involvement," Journal of Clinical Child & Adolescent Psychology, Vol. 50, Issue 3, pp. 301-310, June 4, 2021; "Policy Statement on Children and Guns," American Academy of Child & Adolescent Psychiatry, latest version, June 2022; Shayla A. Sullivant and M. Denise Dowd, "Adolescent Access to Firearms – This is Definitely Our Lane," JAMA Network Open, March 9, 2021, to give but a very few examples.

judgment by an adult that the only person who should take the fall is the 12-year-old.

The petition is dismissed and sealed.

ENTER:

_____

ALAN BECKOFF, JFC

Dated:       Brooklyn, NY

            April 2, 2025